[No. 39585.    Department One.    April 10, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. PAUL ROBERT TETZLAFF, *Appellant.**

*Kempton, Savage & Gossard,* by *Anthony Savage, Jr.,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Steve Paul Moen,* for respondent.

McGOVERN, J.—Defendant appeals from a judgment and sentence entered against him following a jury conviction on two counts each of auto theft and robbery. For appeal purposes he concedes the sufficiency of the admitted evidence to support the verdict. He questions, however, the legal admissibility of certain statements and confessions made by him, introduced by the state, admitted by the court over objections, and considered by the jury.

Following his apprehension as an escapee from the Washington State Reformatory at Monroe, defendant was taken to Seattle, placed in a police lineup and identified by sev-

*Reported in 453 P.2d 638.

eral witnesses as the person who committed a number of robberies in King and Snohomish counties. After being so identified he was returned to Monroe.

Later that day, two detectives from the King County Sheriff's office went to Monroe and, in the confines of that institution, prepared to interrogate the defendant. It had been decided that he would be charged with at least one of the robberies about which he was to be questioned.

Before making inquiry of the defendant regarding the crimes, however, the detectives handed to him a written statement reading as follows:

> I have the following rights: (1) to remain silent and anything I say could be used against me in court; (2) to talk to any attorney before making any statement and to have him present at the time of making a statement; (3) if I have no resources by which I can obtain an attorney, I have a right to wait and *if I am charged* the court will provide me with an attorney. After reading the above and with full knowledge of these rights I have decided of my own free will to make and sign the following statement.

(Italics ours.) Defendant then signed that advisory statement under date of September 28, 1966.

One of the detectives verbally advised the defendant "that if he was without resources *if he was charged,* an attorney would be furnished for him by the State." (Italics ours.) And the other detective told him that "if he does not have resources to obtain an attorney that one would be supplied by the court *when he is taken before the court."* (Italics ours.)

The fact that the defendant was indigent is without contest. He testified that his total resources were in the approximate sum of one dollar and the state did not challenge that testimony.

Under this setting, the detectives then proceeded to question the defendant and obtained from him the statements and confessions which were admitted into evidence against him. Defendant argues that the trial court should have sustained his objections to them at the time of the

pretrial hearing held under CrR 101.20W(a), RCW vol. 0.[1] The basis of his argument is that he was not adequately advised of his right to be represented by legal counsel at the time of interrogation. He contends that the advice given him only indicated that he was entitled to free counsel at a later time. He insists that the advice received falls far short of that to which he was constitutionally entitled. We agree.

■ We hold that, in absence of a legitimate waiver, the right of a known and identified accused to have counsel present at the time of police interrogation is an indispensable part of the protective privilege of the fifth amendment to our federal constitution.

In *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), our highest court dealt at length with the subject of custodial interrogation by officers of the law. It was then made clear that an accused indigent has certain basic constitutional rights that must be honored if an incriminating statement made by him is to be used against him. Included within the enumerated rights is that of legal counsel, free to the indigent at the time of interrogation. The court said at 474:

> This does not mean, as some have suggested, that each police station must have a "station house lawyer" present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him *prior to any interrogation.*

(Italics ours.) And it was further stated at 479 that:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right

---

[1]CrR 101.20W(a) provides:

"In every criminal case in which a confession or confessions of the accused are to be offered in evidence, the judge, either at the time of the trial or prior thereto, shall hold a hearing, in the absence of the jury for the purpose of determining whether, in the light of the surrounding circumstances, the confession was voluntary, and, therefore admissible. A court reporter shall record the evidence adduced at this hearing."

to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, *no evidence obtained as a result of interrogation can be used against him.*

(Footnote omitted. Italics ours.)

An examination of the record here makes it clear that this defendant was merely advised that he was entitled to free legal counsel *if charged or when brought before a court.* That advice was insufficient. He should have been told that he was entitled to free legal counsel at the time of interrogation. He was in legal custody, had been identified as the person who had committed the robberies and it had already been decided that he would be charged with at least one of the robberies. The fact that he had not yet been formally charged makes no difference. This was not the investigatory stage of an unsolved crime. As the known accused he was entitled to legal representation if he was to be questioned about the crimes. *See Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (1964).

■ The state then argues that the defendant waived his right to legal representation. We do not agree. While it is certainly true that an accused may waive his right to counsel, it is equally true that such a waiver is effective only if knowingly, voluntarily and intelligently made. Nowhere in the record does it appear that the defendant knew that he was entitled to have counsel at the time of interrogation. Inasmuch as he was not adequately advised, and because it is not shown that he had actual knowledge of his right to counsel, it cannot therefore be said that he waived the right. One cannot effectively waive such a constitutional right without knowledge of its existence.

The judgment and sentence of the trial court is reversed and the matter remanded for new trial.

HILL and ROSELLINI, JJ., and DONWORTH, J. Pro Tem., concur.

HALE, J. (dissenting)—I dissent. In my opinion, this record ought to satisfy even the most enthusiastic partisans of the Miranda rationale, *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). Not only should the defendant be charged with knowing his rights under the Fifth and Sixth Amendments from personal experience, but it strikes me that the record shows that he was fully advised of whatever privileges he can be said to have acquired under *Miranda*. Explicitly, understandably and repeatedly the officers informed the defendant of his rights under the constitution. But additionally, the conclusion is inescapable in my judgment that in a concentrated career of criminality involving many arrests and several convictions the defendant could not help but have already known them.

The record does not show that the defendant professed ignorance or claimed any mental retardation or disability. At a pretrial hearing under CrR 101.20W to test the voluntariness of his confession, defendant testified that he was convicted of forgery in the first degree in March, 1963, and placed on probation by the superior court. Probation, he said, was revoked in December, 1963, because in November, 1963, he had been convicted of grand larceny in the Superior Court for Clark County, sentenced to 15 years and sent to the reformatory. He testified, too, that while serving time in the reformatory, but detailed to the honor camp at Washougal, he escaped in July, 1966, and remained a fugitive until September 22, 1966, at which time he was captured in Edmonds. During his escape, according to his testimony, he committed armed robbery and was convicted of this crime in October, 1966.

To presume that a person of at least average intelligence in the course of accumulating three felony convictions and while the wheels of justice were grinding slowly away would remain ignorant of his constitutional freedom from compulsory self-incrimination, makes the law appear in-

eluctably foolish and stupid. That during his innumerable consultations with counsel and appearances before the superior court concomitant with the three felony convictions, probation and revocation thereof, the accused was not informed of his rights under the Fifth Amendment, challenges the credulity of the most unsophisticated. The courts, in my opinion, should maintain a degree of sophistication compatible at least with life in the second half of the twentieth century. Even the accused did not try to establish that he was unaware of his rights under the Fifth Amendment. His ignorance of the very rights he is presumed to know—for all persons are presumed to know the law—is simply presumed by the majority.

That the accused already knew of his constitutional and statutory rights as a person accused of crime is no more than a minor aspect of this case, for the record shows he was repeatedly advised of them. The defendant indicated his confession was prompted mainly by a police officer telling him he had been identified as a participant in four armed robberies and there was evidence implicating his relatives. He figured that if he confessed and was cooperative, he would be charged with only one count of robbery and his relatives with none. He did not claim that he confessed because of his ignorance of his right to remain silent.

But aside from the proposition that the defendant knew his rights under the Fifth and Sixth Amendments, the record, I think, shows that the defendant was fully and explicitly advised of them—including, for good measure, that he would be supplied with counsel to represent him in court in event he was charged. If, as is contended in some quarters, *Miranda* mandates a kind of legalistic catechism between questioner and accused as a predicate for admissibility—if the courts are now rejecting the age-old principle that the law looks to substance and not form—even then, I think this record meets the test of such errant sophistry and shows that the court properly admitted defendant's confession.

Here is defendant's own testimony on cross-examination at the pretrial hearing pursuant to CrR 101.20W:

Q. Now, when the Sergeant first arrived, both detectives arrived at the Reformatory, they immediately advised you of your rights, did they not? They introduced themselves and advised you of your rights? A. I believe that is what happened. Q. Can you remember telling them you didn't want a lawyer at that time? A. I don't remember telling them. Q. Is it possible you could have said this? A. It is possible. Q. Then you immediately began giving this statement, the one with regard to the North City IGA, isn't that right? A. Yes, I gave the statement thereafter.

One should note that it is the defendant saying here that he could not remember, and implying that he could have told the officers he did not want a lawyer, and it is the defendant who is saying that he believed the officers advised him of his rights. On this crucial point, in contrast to this negative testimony, we also have the positive testimony of the officers. Detective Richard A. Rebman, King County Deputy Sheriff, referring to conversation with the defendant at the reformatory, testified:

Q. Where did this conversation take place? A. At Monroe, Washington. Q. At the time of this conversation did you have any conversation with the defendant as to the right accorded a person charged with a crime? A. Yes, I did. Q. Can you tell the court what you advised the defendant, if anything? A. I advised the defendant that he had the right to remain silent. That he had the right to have an attorney present during the interrogation. That anything he said during the interrogation could be used as evidence against him. Also, that if he was without resources if he was charged, an attorney would be furnished for him by the State. Q. Did he appear to understand this advice you gave him? A. Yes, very much so. Q. Can you recall any response he made? A. *He made the statement that he did not wish to have an attorney.* Q. Did you at that time give him any sort of writing, indicating his rights? A. Yes, I did. Q. Would you describe this for the court. A. He signed a waiver of those rights. Q. Handing you what has been marked as State's Exhibit 1 for identification, would you tell the court what that is?

A. This is a statement signed by the defendant, Robert Paul Tetzlaff, indicating that he is waiving— Q. Would you read to the court the words that are on that? A. This officer taking this statement has advised me that I have the following rights: (1) to remain silent and anything I say could be used against me in court; (2) *to talk to an attorney before making any statement and to have him present at the time of making a statement;* (3) if I have no resources by which I can obtain an attorney, I have a right to wait and if I am charged the court will provide me with an attorney. After reading the above and with full knowledge of these rights I have decided of my own free will to make and sign the following statement. Dated September 28, 1966 at 3:30 p.m. signed Paul Robert Tetzlaff, witnessed by Detective Harris. Q. Did you also observe him sign this? A. Yes, I did.

(Italics mine.)

Another officer completely corroborated this evidence. Detective Jim Harris, also of the King County Sheriff's staff testified that he was present at the Monroe Reformatory interview when defendant gave a confession. At the pretrial hearing, Detective Harris testified:

Q. Would you tell the court what you recall, what statements were given to the defendant about his rights? A. The defendant was advised of his rights. First of all Detective Rebman and myself introduced ourselves to the defendant and showed identification to the defendant and stated why we were there and advised him of his rights and *asked him if he wished to have an attorney present, which he stated he did not.* He also was given a piece of paper with his rights written on it which he was asked to read, which he did, and then we asked him if he understood it and he stated he did, at which time he signed it and I was present. Q. Handing you what is now marked for identification as State's Exhibit 1. Tell the court if that is the statement he signed? A. Yes, this is the statement he signed. Q. Is your signature on this paper? A. Yes, it is here as a witness.

(Italics mine.)

The record shows too that defendant admitted in open court that he signed a detailed written confession which, just above his signature contained the caveat:

I have read this statement of three (3) pages carefully and find it to be true and correct to the best of my knowledge and belief. I am signing it of my own free will without fear, force, threat or promise of favor.

He testified also that he signed the following statement:

This officer taking this statement has advised me that I have the following rights: (1) to remain silent and anything I say could be used against me in court; (2) to talk to an attorney before making any statement and to have him present at the time of making a statement; (3) if I have no resources by which I can obtain an attorney, I have a right to wait and if I am charged the court will provide me with an attorney.

After reading the above and with full knowledge of these rights I have decided of my own free will to make and sign the following statement:

and that, before signing, he read it and understood its contents. I think the record shows that, if there be a theoretical maximum to the quantum of advice to which an accused is constitutionally entitled, this defendant received far more than his aliquot share.

After hearing the foregoing and other evidence pursuant to CrR 101.20W, the trial judge made findings and conclusions among which he found under "undisputed facts" the following:

At that time, prior to any statements being given by him, he was advised that he had the right to (1) remain silent, and that anything said by him could be used against him in court; (2) to talk to an attorney before making any statements, and have him present at the time of making a statement; (3) and that if he had no resources by which he could obtain an attorney, he had a right to wait, and if charged the court would provide him with an attorney. He stated that he didn't want an attorney. He was then given a typewritten statement setting forth these rights which he then read and signed. After reading and signing this "waiver" the defendant gave a statement admitting his participation in the robbery of the North City I.G.A., and setting forth the details of this crime. This statement was reduced to writing and signed by the defendant. The defendant then gave another statement admitting his participation in other robberies, including the robbery

of the Bothell "Speedee 7-11." This was also signed by the defendant.

The court then entered a formal conclusion that "The defendant knowingly and intelligently waived his right to have an attorney present when he told the officers that he didn't want an attorney." The record, I think, abundantly supports the court's findings and conclusions.

I would conclude from the record that the evidence overwhelmingly established not only that the defendant was informed of his right to remain silent and that anything he might say could be used in evidence, but was repeatedly advised both verbally and in writing that he could talk to an attorney before making any statement and have an attorney present at the time of making a statement. Two officers testified that he said he did not want an attorney, and the defendant not only did not deny this but conceded that possibly he had said so. I do not believe, unless the accused is insane or suffering from serious mental retardation or infirmity, that the constitution requires the police to argue the point with him.

Additionally—and the majority seems to fault the prosecution on this point—the officers verbally and in writing told the defendant that if he were indigent and charged with a crime the court would provide him with counsel. I do not see how it can be held that this further bit of advice— in substance, an assurance that counsel would be appointed by the court at public expense in case he were formally charged and tried—derogates from his waiver of counsel at the interrogation. Accordingly, the court properly ruled to admit the confessions in evidence as voluntarily made.

Finally, before the so-called Miranda rule becomes a complete barrier to the admission of confessions and damaging admissions against interest, the courts should take note of a recently enacted rule of evidence by the Congress governing the admissibility of confessions in the federal courts. In what seems to me to amount largely to a restatement of the American common law, Congress has adopted the following provision:

(a) In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

18 U.S.C.A. § 3501 (Supp. 1969), Act of June 19, 1968.

I think, therefore, that the confessions were properly admitted and would affirm.