[No. 39893.    Department One.    January 15, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID ANDREW ERHO, *Appellant.*\*

\*Reported in 463 P.2d 779.

*Mullavey, Hageman, Treece & Sayre,* by *Matt Sayre,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Jeff A. Morris,* for respondent.

HAMILTON, J.—David Andrew Erho, age 19, was charged, tried and convicted by a jury of the crime of robbery. He appeals from that conviction.

On January 5, 1967, at about 8:30 or 9 p.m., two men, wearing dark glasses, entered the Crown Grocery, a small store located on Roosevelt Way, N.E., in Seattle, Washington. They picked up a package of cupcakes and ordered a carton of cigarettes. As the proprietor placed the cigarettes upon the counter both men confronted him with pointed guns and demanded his money. The proprietor gave them approximately $15 from the cash register and showed them his wallet was empty. The men departed with the money, the cigarettes, and the package of cupcakes. The proprietor pursued them with a gun, fired three shots, and observed their escape in an automobile. The police were notified.

Several days later, the police apprehended one Russell Shaw, the owner and purported driver of the "getaway" car. From his statements and other information, the police, late in the afternoon and evening of January 18, 1967,

learned the identity and whereabouts of appellant and a companion believed to be implicated with appellant in the robbery. At about 1:30 a.m., on January 19, 1967, four officers entered the hotel where appellant was living and arrested him, a male companion, and one Naomi Shaw Gage, Russell Shaw's sister, at the room which the three were occupying. The detective in charge testified he advised appellant of his constitutional rights at the time of arrest. Immediately after the arrest, the three were taken into custody and transported in separate patrol cars to the location of Shaw's automobile. On the way, appellant orally admitted to the two officers with him in the patrol car his participation in the Crown Grocery robbery and indicated that the guns involved were in the trunk of the Shaw vehicle.

When the group arrived at the site of the Shaw vehicle, Naomi Shaw Gage gave the car keys to the police and consented to a search of the automobile. Amid other paraphernalia the police discovered sunglasses and two pistols. The suspects were then taken to the police station where appellant was offered the use of a telephone, which he declined.

Between 3:30 and 4:30 a.m., appellant's statement of his participation in the robbery was reduced to writing by the interrogating officer and signed in the presence of the officer and appellant's alleged accomplice in the robbery. This written statement included a declaration that appellant had been fully advised of his constitutional rights, and a delineation of those rights. Within a few days thereafter, appellant and his companion were identified in a lineup by the proprietor of the Crown Grocery. Appellant was then formally charged with the crime of robbery, counsel was appointed to represent him, and upon arraignment he entered a plea of not guilty and moved to suppress his admissions and the products of the search of the Shaw vehicle.

At the pretrial hearing on appellant's motion to suppress, conducted pursuant to CrR 101.20W, appellant took the stand and testified he did not receive any warnings with respect to his constitutional rights at the time of arrest,

could not remember the extent of any warnings he received, and only vaguely remembered giving a statement. He further testified that at the time of his arrest and during interrogation he was under the influence of narcotics, admitting, however, that he did not inform the police of his condition, and that his condition would have been difficult to detect by anyone who did not know him well.

The officer who arrested and interrogated appellant testified concerning the admonitions he gave appellant at the time of arrest. In this respect he stated he:

> Told him he didn't have to say anything; had the right to remain silent; had the right to see an attorney before saying anything; had the right to have an attorney present at that time before saying anything.

The officer was not requested to nor did he elaborate further upon the content of the warnings at the time of arrest and none of the other officers present at that time or who accompanied appellant to the Shaw automobile and the police station were called as witnesses.

The officer further testified that appellant denied being affected by any drugs when asked as a preliminary step in the interrogation, and that appellant did not appear to be so affected.

At the conclusion of the hearing, the trial court determined from the evidence adduced that appellant's arrest was lawful; that the search of the Shaw vehicle was with the express permission of the only person then entitled to exercise dominion over it, Naomi Shaw Gage; that at the time of arrest appellant was not advised, prior to questioning, of his right to have counsel appointed for him if he could not afford an attorney, but that at the time he signed the written statement at the police station he was advised of his rights; and that appellant was not under the influence of any drugs at the time of his apprehension and interrogation. Based upon these determinations, the trial court held appellant's oral admissions made in the patrol car immediately after arrest to be inadmissible because of the inadequacy of the warnings at the time of arrest. The motion to suppress was otherwise denied and appellant's written

statement as well as the guns discovered in the Shaw vehicle and identified by the proprietor of the Crown Grocery as being of the kind used in the robbery were admitted into evidence during appellant's trial.

By way of his first assignment of error, appellant challenges the admissibility into evidence of his written statement. In this respect, he points to *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), and *State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968), and argues, first, that the state failed to meet its heavy burden of proof in its effort to demonstrate that appellant knowingly, intelligently, and voluntarily waived his constitutional rights to counsel and to remain silent; and, second, that the inadequacy of the Miranda warnings at the time of arrest, coupled with his oral admissions shortly thereafter, infected the voluntariness and admissibility of his subsequent confirmatory written statement.

We agree with appellant upon both scores.

It is stated by the United States Supreme Court in *Miranda v. Arizona, supra,* at 475:

> If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.

In *State v. Davis, supra,* this court recognized the burden of proof imposed upon the state by the *Miranda* decision and stated, at 283 and 286:

> The thrust of *Miranda* is aimed at the state's burden of proving that the appropriate warnings were given and that the accused effected a valid waiver, and does not apply to the state's burden of proving that the confession was in fact made. . . .
>
> . . .
>
> Moreover, *Miranda* specifically points out certain factual criteria which should be considered in determining the validity of a waiver, . . . But these factual criteria are of little value in determining whether the police in a particular case have followed the mandate of *Mi-*

*randa,* if the only proof relative to such criteria is the testimony of one interrogating officer—the very person who allegedly violated the accused's constitutional rights. If in fact an accused's waiver is not valid, often his only means of proving the invalidity is his own testimony to that effect. But a review of cases, in which the issue of the admissibility of a confession had to be resolved on the basis of a "swearing contest," indicates that almost invariably the police officer was held by the trial court to be more credible than the accused. In contrast to the accused's inadquate means of establishing evidence, the police, when interrogating the accused within the confines of a station house, have readily available numerous methods and techniques of establishing corroborating testimony and independent supporting evidence, *e.g.,* (1) the officers, in addition to the interrogating officer, who may witness the accused's waiver; (2) stenographers; (3) tape recordings; (4) motion pictures; and (5) video tape recordings.

(Footnote omitted.)

And, finally, the *Miranda* decision points out, at 492:

The mere fact that he [Miranda] signed a statement which contained a typed-in clause stating that he had "full knowledge" of his "legal rights" does not approach the knowing and intelligent waiver required to relinquish constitutional rights.

■ In the instant case, despite the presence of four officers at the scene of the arrest and two officers accompanying appellant in the patrol car, we, as was the trial court, are presented with only the testimony of one officer as to the nature of the warnings given appellant concerning his constitutional rights at the time he was taken into custody. Added to this is the fact that the officer testifying admitted that he failed to advise appellant that any statement he might give could be used against him and that if he desired counsel and could not afford to hire an attorney one would be provided for him before any questioning. It is conceivable, of course, that all of the officers present did not hear the admonitions given; however, the record is silent in this regard and, on the contrary, creates a lurking, but unconfirmed, impression that the warnings were given immedi-

ately upon the suspects being taken into custody and in the presence of all participating.

In this latter respect the state points to the statement of Naomi Shaw Gage during the course of the trial to the effect that she was advised as to her rights when arrested as corroboration of the officer's testimony. However, again, the record is silent as to who advised her of these rights, the content of the advice, and where the appellant was at the time the information was conveyed to her. Her statement, therefore, adds little more than speculative weight to the state's burden of proof.

Contrasted to the foregoing is appellant's testimony that he did not receive any admonitions at the time of his arrest and prior to his reaching the police station.

As in *State v. Davis, supra,* the state appeared content to rest its case, relative to the admonitions given appellant prior to the elicitation of incriminating statements, upon a "swearing contest." Where, as here, there appears to be adequate opportunity to obtain and present the corroborating testimony of other officers present at the scene of apprehension and custody, we are satisfied the state fails to meet the heavy Miranda burden of proof when, without explanation, it omits to supply such corroboration. *State v. Davis, supra.*

By appellant's second argument, he alludes to the inadequacy of the warnings which the officer testified were given him at the time of his arrest and contends that such inadequacies infected not only the admissibility of his oral admissions in the police car while enroute to the station, but also his subsequent written statement. In this regard, it is to be observed that the officer testifying with respect to the oral admissions in the police car and their relationship to the subsequent written statement said:

Myself, and Sergeant Shoener, I believe, took some participation in this and when we arrived at the station later on it was reduced to a signed statement.

At this point, we pause to observe that the decision in *Miranda v. Arizona, supra,* emphasizes, at 469:

The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of foregoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege.

and, at 473:

In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. . . . As with the warnings of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it.

*Miranda v. Arizona, supra,* then summarizes concerning the necessary warnings, at 479:

He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. . . . After such warnings have been given, and such opportunity [to exercise them] afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

Here, the trial court found, and we agree, that the warning which the officer testified was given at the time of arrest was inadequate. *State v. Tetzlaff,* 75 Wn.2d 649, 453 P.2d 638 (1969). It failed to advise the appellant that anything he said might be used against him and that, being an indigent, he was entitled to appointed counsel if he so desired prior to any questioning. Despite these inadequacies, however, the officers in the patrol car questioned him

and elicited an admission of his participation in the offense involved. This was later, within a very short time and without a break in continuity, reduced to written form. As heretofore indicated, the trial court excluded the oral admissions but admitted the written statement.

We are satisfied, upon the record as it stands, that the written statement is but the direct and derivative product of the oral admissions. It perforce suffers from the same infirmities the trial court found infected the oral statements. In short, by his oral admissions the appellant had "let the cat out of the bag by confessing" and was not "thereafter free of the psychological and practical disadvantages of having confessed." He could not get the cat back in the bag, for the secret was out. *United States v. Bayer,* 331 U.S. 532, 91 L. Ed. 1654, 67 S. Ct. 1394 (1947); *Westover v. United States,* 384 U.S. 436, 494, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966); *Harrison v. United States,* 392 U.S. 219, 20 L. Ed. 2d 1047, 88 S. Ct. 2008 (1968). Thus, the voluntariness and admissibility of his written statement was compromised.

The state contends, however, that the prefatory declarations in the written statement, to the effect that appellant was fully advised of his rights and delineating those rights, render the statement voluntary and establish the necessary waiver of rights. Again, it is conceivable that circumstances could be shown which would elevate such prefatory declarations to the dignity of a voluntary, intelligent, and knowing waiver of constitutional rights, even after improper preliminary interrogation. However, no such circumstances appear in the record here, and absent such a showing the introductory pronouncements, standing by themselves, are insufficient. *Miranda v. Arizona, supra.*

The trial court, upon the basis of the record before it, erred in not excluding the written statement along with its genesis, the oral admissions.

Appellant's remaining assignments of error challenge the validity of the search of the Shaw vehicle, the propriety of testimony elicited during trial by the state concerning a parole officer, the failure of the trial court to give a pro-

posed instruction, and the constitutionality of the statutes under which appellant was sentenced.

■ We find no merit in appellant's claim that the Shaw vehicle was unlawfully searched. The evidence reveals that Naomi Shaw Gage, the owner's sister and the only person then entitled to exercise dominion over the vehicle, expressly consented to the search and implemented that consent by furnishing the police with the car keys. Appellant claimed neither control nor right of control over the vehicle. The search was therefore permissible. *State v. Kearney*, 75 Wn.2d 168, 449 P.2d 400 (1969).

We do not reach or pass upon the claims of error dealing with testimony regarding a parole officer and the failure to grant a proposed instruction. Upon retrial it is improbable that the circumstances giving rise to these claims of error will reoccur.

In conclusion, we find no merit in appellant's attack upon the constitutionality of the statutes under which he was sentenced. The authority upon which he relies in this regard is clearly distinguishable.

The judgment of conviction is reversed and the cause is remanded for new trial.

HUNTER, C. J., WEAVER, J., and DONWORTH, J. Pro Tem., concur.

FINLEY, J. (dissenting)—I think the views of the majority are an unnecessary extension and application of *Miranda*. The error, if any, was harmless. I would affirm the trial court's judgment.