[No. 28044-9-I.   Division One.   December 21, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. ERICK LEE ALLENBY, *Appellant*.

*Elaine Winters* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Brenda Bannon, Deputy,* for respondent.

COLEMAN, J. — Erick Lee Allenby, a juvenile, appeals his judgment and sentence for one count of taking a motor vehicle without permission, alleging that the Superior Court erroneously admitted his oral and written confessions and that he was denied effective assistance of counsel. We affirm.

On September 20, 1987, Washington State Patrol trooper Patrick Ditter was traveling on Interstate 82 when he saw a pedestrian with his thumb out. Trooper Ditter stopped the pedestrian, informed him that he was on a limited access freeway, and stated that hitchhiking was against the law. To determine whether the pedestrian was a runaway, Trooper Ditter asked the pedestrian for his name and date of birth, learned that the pedestrian's name was Erick Allenby, and ran a wants and warrants check.

When no information came back, Trooper Ditter decided to transport Allenby to a nearby town so Allenby could place a phone call to his brother, who lived in Kennewick. With Allenby's permission, Officer Ditter patted Allenby down to check for weapons and placed him in the backseat of the patrol car. However, before they started driving, Trooper Ditter received a radio communication from Yakima advising him that Allenby was an escapee from a juvenile deten-

tion facility and that there was a King County warrant out against him. Trooper Ditter testified that when Allenby heard the radio communication he stated, "Yep, that's me." At that point Trooper Ditter removed Allenby from the car, handcuffed him, completed a thorough search of his person, and placed him back in the vehicle. Although Trooper Ditter had placed Allenby under custodial arrest, at that time he did not advise Allenby of his *Miranda*[1] rights. Trooper Ditter then transported Allenby to the Sunnyside Police Department.

During their trip to Sunnyside, Trooper Ditter asked Allenby about his trip from Seattle to Yakima, and Allenby made a brief incriminating statement. Immediately, Trooper Ditter stopped the conversation and read the *Miranda* warnings to Allenby. Trooper Ditter testified that Allenby was alert and coherent, that Allenby stated that he understood his *Miranda* rights, and that Allenby did not request an attorney. Trooper Ditter then questioned Allenby again about his trip, and Allenby told Trooper Ditter that he had stolen a red and black Chevrolet K-5 Blazer from Biddle Chevrolet in King County. Trooper Ditter also testified that Allenby stated the Blazer was possibly between Issaquah and the Snoqualmie summit on I-90 and that the keys to the car were in a pair of blue jeans which he was carrying with him. Trooper Ditter retrieved the keys.

Based on the information received by Trooper Ditter, Erick Allenby was charged by information on November 20, 1987, with one count of taking a motor vehicle without permission.

During trial which followed, the Superior Court conducted a CrR 3.5 hearing to determine whether the statement Allenby made prior to *Miranda* warnings and the statements Allenby made after the warnings should be suppressed. Although the Superior Court found that the brief inculpatory statement made prior to the giving of the *Miranda* warnings

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

was inadmissible, the Superior Court admitted the statements which Allenby made after the *Miranda* warnings were given. The Superior Court found Allenby guilty as charged, and on March 12, 1991, Allenby was given a sentence within the standard range. Allenby appeals.

We initially consider whether the Superior Court erroneously admitted Allenby's post-*Miranda* confession because Allenby's first inculpatory statement was made prior to *Miranda* warnings. Prior courts have addressed whether a defendant's unwarned remark compromised the voluntariness of the defendant's later warned confession. When a prior statement has been coerced, "the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." *Oregon v. Elstad*, 470 U.S. 298, 310, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (1984). However, when a prior unwarned statement is clearly voluntary, a break in the stream of events is not required before a second warned confession can be rendered admissible. A thorough administration of *Miranda* warnings "conveys the relevant information and thereafter the suspect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as an 'act of free will.'" *Elstad*, at 311 (quoting *Wong Sun v. United States*, 371 U.S. 471, 486, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963)).

## A

Allenby first contends that the Superior Court's admission of his later warned confession violated his right to remain silent and his right to counsel because, under the totality of the circumstances, Allenby did not make a knowing, voluntary, and intelligent waiver of his *Miranda* rights. The right against compelled self-incrimination is derived from the fifth amendment to the United States Constitution.[2] *See Miranda v. Arizona*, 384 U.S. 436, 439, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.4th 974 (1966). Citing *State v. Lavaris*, 99

---

[2]The fifth amendment to the United States Constitution provides: "No person . . . shall be compelled in any criminal case to be a witness against himself[.]"

Wn.2d 851, 859, 664 P.2d 1234 (1983) and *State v. Erho*, 77 Wn.2d 553, 561, 463 P.2d 779 (1970), Allenby contends that the voluntariness and admissibility of his warned confession were compromised because he had "let the cat out of the bag" in his prior unwarned statement.[3]

■ However, Allenby's contention ignores federal precedent, cited above. The "cat out of the bag" doctrine first announced in *United States v. Bayer*, 331 U.S. 532, 91 L. Ed. 1654, 67 S. Ct. 1394 (1947) and adopted by *Erho* and *Lavaris* has been modified by *Elstad*, which holds that when a prior unwarned statement is clearly voluntary, the proper administration of *Miranda* warnings renders the second warned confession an " 'act of free will.' " *Elstad*, at 311 (quoting *Wong Sun*, at 486).

As in *Elstad*, the evidence presented on the record before this court supports a finding that Allenby's unwarned statement was voluntary. Allenby objected at trial to any testimony concerning the conversation between Trooper Ditter and himself prior to Allenby's unwarned admission, and the precise nature of their discussion was not revealed. However, the record indicates that Trooper Ditter had no knowledge of Allenby's taking of a motor vehicle prior to his brief unwarned remark and that Allenby unexpectedly stated "we stole it" in reference to a vehicle during their conversation. In addition, the record indicates that Trooper Ditter made no threats or promises to induce Allenby's subsequent statement and that Allenby knew his rights and understood them before giving his warned confession. Thus, because Allenby's prior unwarned statement was an unexpected, voluntary confession to a crime of which Trooper Ditter was unaware, Trooper Ditter's careful reading of the *Miranda* warnings

---

[3]In *Lavaris*, a suspect arrested for murder confessed to the crime while engaged in an unwarned 45-minute conversation with a police detective. His later warned confession was held inadmissible. *See Lavaris*, at 854-61. Similarly, in *Erho*, a suspect who was arrested for armed robbery confessed to the crime and directed police to the guns involved while being transported in a patrol car by two officers. *Erho*, at 555. His later warned confession was not taken until 2 to 3 hours later and was subsequently held inadmissible. *Erho*, at 555, 561.

rendered Allenby's second confession an act of free will, evidence of which could be admitted at trial.

## B

Allenby next contends that the Superior Court's admission of his later warned confession violated article 1, section 9 of the Washington Constitution.[4] Allenby contends that this court should engage in a *State v. Gunwall*[5] analysis to determine whether the state constitution provides more protection against self-incrimination than the Fifth Amendment, its federal counterpart.

However, in *State v. Earls*, 116 Wn.2d 364, 805 P.2d 211 (1991) use of the *Gunwall* analysis was found to be unnecessary for article 1, section 9 because state precedent holds that "the protection of article 1, section 9 is coextensive with, not broader than, the protection of the Fifth Amendment." *Earls*, at 374-75. Although Allenby contends that *Earls* does not apply because it addressed the Fifth Amendment right to counsel rather than the Fifth Amendment privilege against self-incrimination, we disagree. In declining to hold that article 1, section 9 provides greater protection than the Fifth Amendment, the *Earls* court relied upon *State v. Moore*, 79 Wn.2d 51, 483 P.2d 630 (1971) and *State v. Franco*, 96 Wn.2d 816, 639 P.2d 1320 (1982), two decisions which specifically addressed the coextensive scope of the state and federal privileges against self-incrimination.[6] *See Earls*, at 375-77. In light of *Earls, Moore*, and *Franco*, we decline to engage in the *Gunwall* analysis which Allenby proposes.

---

[4] Article 1, section 9 of the Washington Constitution reads: "No person shall be compelled in any criminal case to give evidence against himself[.]"

[5] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

[6] Quoting *Moore*, the *Earls* court stated that the Washington Constitution's protection "against self-incrimination envisions the same guarantee as that provided in the federal constitution." *Earls*, at 376 (quoting *Moore*, at 57). Citing *Franco*, the *Earls* court noted that *Moore* is stare decisis on the issue of the coextensive protection provided by article 1, section 9 and the Fifth Amendment. *Earls*, at 377.

■ Finally, we consider whether Allenby was denied effective assistance of counsel.

In *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), the United States Supreme Court adopted a 2-prong test to determine whether a defendant has been denied effective assistance of counsel.

> First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial[.]

*Strickland*, at 687. If either prong of the *Strickland* test is not met, the claim of ineffective assistance of counsel fails. *Strickland*, at 687.

Allenby contends that he was denied effective assistance of counsel because his attorney failed to move to suppress the keys to the stolen truck pursuant to CrR 3.6. However, Allenby's counsel stated at the start of trial that he intended to move to suppress statements and evidence pursuant to CrR 3.5 and CrR 3.6 and that these motions would be proffered during the course of testimony. When Allenby's CrR 3.5 motion was denied and the warned confession was ruled admissible, defense counsel acted reasonably in refraining from further argument to suppress the keys under CrR 3.6, because the Superior Court's ruling that the confession was admissible removed the basis for Allenby's "fruit of the poisonous tree" argument with respect to the keys. Thus, defense counsel's performance cannot be characterized as deficient. Lacking a showing of deficient performance, Allenby has failed to meet the first prong of the *Strickland* test, and his ineffective assistance claim fails.

The judgment and sentence of the trial court are affirmed.

WEBSTER, A.C.J., and SCHOLFIELD, J., concur.

Review denied at 121 Wn.2d 1033 (1993).