103 P.3d 1238 (2005)
STATE of Washington, Respondent,
v.
Audrey E. GRAHAM, Petitioner.
No. 74554-4.
Supreme Court of Washington, En Banc.
Argued June 29, 2004.
Decided January 13, 2005.
As Amended February 1, 2005
Reconsideration Denied March 8, 2005.
*1239 Elaine L. Winters, Wash. Appellate Project, Seattle, for Petitioner.
Ian Michael Goodhew, Brian Martin McDonald, King Co. Pros. Office, Seattle, for Respondent.
OWENS, J.
Audrey Graham was found guilty in juvenile court of vehicular homicide and three counts of reckless endangerment, all arising from a one-car accident. Graham argues that, rather than charging her with one count of reckless endangerment for each of her surviving three passengers, the State should have been limited to charging her with a single count of reckless endangerment for her conduct in causing one automobile accident. Graham also questions whether the juvenile court's findings of fact support its conclusion of law that she acted "recklessly," as that term is defined by statute.
We hold that the unit of prosecution for the offense of reckless endangerment is each person endangered; consequently, the State permissibly charged Graham with three violations of RCW 9A.36.050(1). We also conclude that the juvenile court's findings support its determination that Graham acted "recklessly," as that term is defined in RCW 9A.08.010(1)(c). We therefore affirm the decision of the Court of Appeals.

FACTS
On March 16, 2001, 16-year-old Audrey Graham left Vashon High School, driving her parents' 2000 Hyundai Tiburon. Her classmate Katie Bos rode in the front passenger seat. Despite her awareness that the backseat was equipped with only two seat belts, Graham invited three other friends to join her and Bos. Ashley Fix sat in the backseat between Sydney Shelton and Jake Wittmier, neither of whom used the available seat belts.
Before leaving the school grounds, Graham drove to a nearby gravel parking lot in order to spin the car around in a circle at high speed. Graham drove back onto the pavement and accelerated out of the parking lot, causing the car to fishtail. Soon after they left the school, Shelton saw that the speedometer was at 60 m.p.h. After Graham turned onto Monument Road, which has a posted speed limit of 40 m.p.h. three-tenths of a mile from school, Wittmier observed that the speedometer read 80 m.p.h. Rocking the steering wheel back and forth several times to make the car swerve, Graham said, "`Look, I can drive like Thomas [Porro],' which was a reference to her boyfriend and his driving." Clerk's Papers (CP) at 245, Finding of Fact (FF) 7. Graham lost control of the car when she looked down to adjust the stereo. The car slid across the roadway, hit a ditch, rolled several times, and came to a stop 407 feet from the first skid marks on the roadway. All three of the backseat passengers were ejected. Shelton and Wittmier were injured, and Fix died instantly. At the scene, Graham approached King County Deputy Sheriff Chris Kahrs and said, "`It's my fault ... I was going too fast." CP at 245, FF 11.
On July 12, 2001, the State charged Graham in juvenile court with one count of vehicular homicide for the death of Ashley Fix. The State amended the information on December 4, 2001, to add three counts of reckless endangerment for Graham's three other passengers. Testimony taken at the fact-finding hearing in December 2001 established that Graham had taken a driver's education course before the crash and had learned that exceeding the speed limit and driving inattentively or recklessly was dangerous. Graham also admitted that Porro's excessively fast driving had frightened her in the past.
The court found Graham guilty on all four counts. Graham appealed, and the Court of Appeals affirmed in a partially published decision. State v. A.G., 117 Wash.App. 462, 72 P.3d 226 (2003). We granted Graham's petition for review.

*1240 ISSUES
(1) For the offense of reckless endangerment, set forth in RCW 9A.36.050(1), is the unit of prosecution each person endangered or each endangering act?
(2) Did the juvenile court's findings of fact support its conclusion of law that Graham had acted "recklessly," as that term is defined in RCW 9A.08.010(1)(c)?

ANALYSIS
Standard of Review. Graham raises a question of statutory interpretation and challenges one of the juvenile court's conclusions of law. Appellate review of both issues is de novo. State v. Thomas, 150 Wash.2d 666, 670, 80 P.3d 168 (2003) (citing State v. Ammons, 136 Wash.2d 453, 456, 963 P.2d 812 (1998); State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003)).
Unit of Prosecution for Reckless Endangerment. Graham argues that her three convictions for reckless endangerment violated double jeopardy. The double jeopardy clauses of the Washington State Constitution, article I, section 9, and the fifth amendment to the federal constitution "protect against multiple punishments for the same offense, as well as against a subsequent prosecution for the same offense after acquittal or conviction." In re Pers. Restraint of Orange, 152 Wash.2d 795, 815, 100 P.3d 291 (2004). Where a defendant contends that his sole act has been punished twice under separate criminal statutes, the question is "whether, in light of legislative intent, the charged crimes constitute the same offense." Id. If the relevant statutes do not disclose legislative intent, the reviewing court will apply the "same evidence" or Blockburger test,[1] by which two charged crimes will not be deemed the same offense if each statute requires proof of a fact not required by the other statute. However, as this court recognized in State v. Adel, 136 Wash.2d 629, 633, 965 P.2d 1072 (1998), "[w]hen a defendant is convicted for violating one statute multiple times, the same evidence test will never be satisfied," since the multiple convictions "will always be the same in law, but ... never ... the same in fact." Consequently, the double jeopardy analysis for multiple convictions for violating the same statute requires a determination of "what act or course of conduct ... the Legislature defined as the punishable act": "When the Legislature defines the scope of a criminal act (the unit of prosecution), double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime." Id. at 634, 965 P.2d 1072. Where the legislature has not clearly indicated the unit of prosecution in a criminal statute, the "lack of statutory clarity favors applying the rule of lenity." Id. at 635, 965 P.2d 1072.
RCW 9A.36.050(1) provides that "[a] person is guilty of reckless endangerment when he or she recklessly engages in conduct not amounting to drive-by shooting but that creates a substantial risk of death or serious physical injury to another person." Graham contends that the unit of prosecution is the alleged act of reckless conduct (here, her reckless driving), whereas the State maintains that the legislature intended to criminalize a defendant's reckless endangerment of a particular individual.
Graham relies on State v. Westling, 145 Wash.2d 607, 40 P.3d 669 (2002), wherein we concluded that the unit of prosecution for second degree arson is the defendant's act of setting the fire, not each item of property damaged by the fire. As the Court of Appeals explained in the present case, see 117 Wash.App. at 469, 72 P.3d 226, the statute at issue in Westling does not predicate guilt on damage to a particular piece of property but criminalizes the setting of a fire that "damages a building, or any structure or erection appurtenant to or joining any building, or any wharf, dock, machine, engine, automobile, or other motor vehicle, watercraft, aircraft, bridge, or trestle, or hay, grain, crop, or timber, whether cut or standing or any range land, or pasture land, or any fence, or any lumber, shingle, or other timber products, or any property." RCW 9A.48.030(1) *1241 (emphasis added). The analysis in Westling was straightforward:
[T]he statute refers, in relevant part, to the causing of "a fire" that damages "any automobile." "Any" means "every" and "all." State v. Smith, 117 Wash.2d 263, 271, 814 P.2d 652 (1991). Thus, under the plain language of the statute, one conviction is appropriate where one fire damages multiple automobiles, i.e., by use of the word "any" the statute speaks in terms of "every" and "all" automobiles damaged by the one fire.
145 Wash.2d at 611-12, 40 P.3d 669. The Court of Appeals in the present case observed that, in contrast to the arson statute, the reckless endangerment statute proscribes conduct that places at risk not simply any person but "another person." RCW 9A.36.050(1) (emphasis added). In State v. DeSantiago, 149 Wash.2d 402, 68 P.3d 1065 (2003), we applied the Westling analysis to the use of "a," rather than "any," in weapon enhancement statutes to support our holding that the plain language of the statutes required a sentence enhancement for each weapon carried during offense. Id. at 419, 68 P.3d 1065. The Court of Appeals thus concluded that, by the plain language of RCW 9A.36.050(1), "the legislature intended one unit of prosecution per victim." 117 Wash.App. at 470, 72 P.3d 226; see Commonwealth v. Frisbie, 506 Pa. 461, 466, 485 A.2d 1098 (1984) (concluding that reckless endangerment statute, which prohibited conduct jeopardizing "`another person,'" "was written with regard to an individual person being placed in danger of death or serious bodily injury, and that a separate offense is committed for each individual person placed in such danger").[2]
While the plain language analysis of Westling supports the conclusion of the Court of Appeals in the present case, significant additional support may be derived from a broader consideration of the nature of reckless endangerment. Likewise faced with determining the unit of prosecution in a statute prohibiting conduct recklessly endangering "another person," the Maryland Court of Special Appeals took "a moment to stand on the mountaintop and look down on the larger field of the criminal law in perspective." Albrecht v. Maryland, 105 Md.App. 45, 58, 658 A.2d 1122 (1995). Recalling the common categorization of crimes into those against property, habitation, public morals, and persons, the Maryland court defined reckless endangerment as "quintessentially a crime against persons." Id. The court reached that conclusion by considering the relationship between reckless endangerment, an inchoate crime, and "the entire range of consummated crimes from which... [it] is either one step removed (no actual harm) or two steps removed (neither actual harm nor intent to harm)." Id. at 59, 658 A.2d 1122. As the Albrecht court observed, those consummated crimes  "homicides and batteries and assaults, simple and aggravated, intended and unintended"  "are classically crimes against the person"; thus, "[i]t is even so with this newest inchoate addition to that inherently dangerous family." Id. Consistent with this principle that an inchoate crime draws its essential character from the consummated form of the crime, the State argued that reckless endangerment should be treated the same as vehicular homicide or vehicular assault. As the State observed, reckless endangerment makes a defendant responsible for subjecting another person to the risk of death or serious injury, whereas the consummated crimes of vehicular homicide or vehicular assault are chargeable when the reckless behavior actually causes a person's death or serious injury. See RCW 9.94A.589. In the State's view, given that "multiple counts of vehicular homicide and vehicular assault may be charged where multiple victims occupy the same vehicle," it would be anomalous to *1242 conclude, as Graham would have this court do, that only one count of reckless endangerment may be charged where multiple vehicle occupants have been put at substantial risk. State v. Bourne, 90 Wash.App. 963, 973, 954 P.2d 366 (1998).
In light of the plain language of RCW 9A.36.050(1), as well as the nature of reckless endangerment as a crime against the person, we hold that the legislature has authorized the imposition of multiple sentences where a defendant's reckless act endangers multiple individuals. Because the unit of prosecution for the crime of reckless endangerment is each person endangered, not each endangering act, the State was entitled to charge Graham with three counts of reckless endangerment. We affirm the Court of Appeals.
Graham's Challenge to Juvenile Court's Finding of Recklessness. As set forth above, "[a] person is guilty of reckless endangerment when he or she recklessly engages in conduct ... that creates a substantial risk of death or serious physical injury to another person." RCW 9A.36.050(1) (emphasis added). RCW 9A.08.010(1)(c) provides that "[a] person is reckless or acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation." (Emphasis added.) Because the conclusion that "an act is reckless depends on both what the defendant knew and how a reasonable person would have acted knowing these facts," the statutory definition has been described as "includ [ing] a subjective and objective component." State v. R.H.S., 94 Wash.App. 844, 847, 974 P.2d 1253 (1999).
With regard to the three charged counts of reckless endangerment, the juvenile court concluded that the State had proved beyond a reasonable doubt that Graham "acted recklessly." CP at 246. Graham contends, however, that the findings failed to establish the subjective component of the statutory definition. The relevant factual findings are as follows:
12. Prior to the accident, the respondent had passed driver's education, in which the respondent had been instructed as to the hazards of driving at excessive speeds, in an inattentive manner, and recklessly. She knew that not following these instructions created a dangerous situation. She had driven on numerous occasions, and was considered a safe driver. The respondent testified that prior to March 16, 2001, she had on occasion been a passenger in her boyfriend's car while he was speeding down straight roads, and that his excessive speed on those instances made her fearful. Given the instruction she received, her previous history of safe driving, and her prior experiences, the respondent knew the risks inherent in driving fast or in an unsafe manner.

13. Although the respondent knew that driving at high speeds, not paying attention to the road, and playing games with the wheel were unsafe and could cause an accident, the Court cannot find that she had actual knowledge of the risks inherent in the particular dangerous situation she created on March 16th.
14. A reasonable person in a similar situation would have recognized the risks inherent in the driving behavior in which the respondent engaged. As such, even if she did not have actual knowledge of the specific risks, she had constructive knowledge of those risks.
CP at 245-46, FF 12-14 (emphasis added). The juvenile court thus explicitly found that Graham "knew that" driving at high speeds, inattentively, or recklessly "created a dangerous situation"; that she "knew the risks inherent in driving fast or in an unsafe manner"; and that she "knew that driving at high speeds, not paying attention to the road, and playing games with the wheel were unsafe and could cause an accident." Id., FF 12-13 (emphasis added). The findings that Graham "knew" that her conduct "created a dangerous situation" and "could cause an accident" satisfy the knowledge component of the statutory definition of recklessness: "A person ... acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur." RCW 9A.08.010(1)(c).
Graham incorrectly claims that "[t]he juvenile court found that [she] did not understand *1243 the risks involved in her driving." Suppl. Br. of Pet'r at 14; see also Pet. for Review at 12 (stating that "the juvenile court specifically found that [Graham] was not aware of the risks involved in her conduct"); Appellant's Opening Br. at 38 (referring to "[t]he juvenile court's factual finding that [Graham] did not know the risks of her dangerous driving"). Graham's characterization of the juvenile court's findings rests on the court's unnecessary distinction between, on the one hand, Graham's actual knowledge of the risks inherent in high-speed, inattentive, and foolhardy driving and, on the other hand, Graham's lack of actual knowledge as to how "the particular dangerous situation she created on March 16th" would unfold. CP at 246, FF 13 (emphasis added). In other words, while RCW 9A.08.010(1)(c) requires actual knowledge "that a wrongful act [here, the loss of control over the automobile] may occur," the statute does not require actual knowledge that the loss of control will result in the skidding and rolling of the car and the violent ejection of its passengers. The juvenile court provided the unnecessary conclusion that, even if it could not find that Graham knew the "specific risks," "[a] reasonable person in a similar situation would have recognized the risks inherent in the driving behavior in which the respondent engaged." CP at 246, FF 14. For purposes of the subjective knowledge component of recklessness, this additional finding that Graham also had constructive knowledge of the "particular" or "specific" accident is not essential. It has no effect on the very clear findings that Graham "knew" that her conduct  "playing with the steering wheel ... coupled with her speed and inattention to the road"  "could cause an accident." CP at 245, 246, FF 8, 13. Such knowledge meets the statutory requirements of RCW 9A.08.010(1)(c).

CONCLUSION
By prohibiting conduct that recklessly endangers "another person," the legislature indicated that the unit of prosecution for reckless endangerment is not the endangering conduct but the particular person placed at risk. Establishing that Graham "knew" that her conduct "created a dangerous situation" and "could cause an accident," CP at 245-46, FF 12-13, the juvenile court's factual findings support its conclusion of law that Graham acted "recklessly," as that term is defined in RCW 9A.08.010(1)(c). We affirm the Court of Appeals.
We concur: ALEXANDER, C.J., JOHNSON, IRELAND, BRIDGE and FAIRHURST, JJ.
MADSEN, J. (dissenting).
The majority affirms Audrey Graham's convictions on three counts of reckless endangerment based on an automobile accident involving three passengers. The majority holds that the unit of prosecution for reckless endangerment is each person endangered. However, none of the reasons advanced by the majority justifies its conclusion. The result of the majority's analysis is that the number of convictions for reckless endangerment may rest entirely on chance  for example, whether there is one passenger in a vehicle or five, despite the fact that the defendant's conduct and mental state are the same.
I would hold that the unit of prosecution is a course of conduct that recklessly endangers a person or persons other than the defendant. Here, there can be no question but that the defendant engaged in only one such course of conduct. Therefore, only one conviction for reckless endangerment is proper.

ANALYSIS
This court must determine what constitutes the unit of prosecution for the crime of reckless endangerment in the second degree in order to determine whether the double jeopardy bar has been violated by the defendant's multiple convictions. None of the reasons given by the majority support its holding that the unit of prosecution for reckless endangerment is each person endangered.
The majority first reasons that the decision in State v. Westling, 145 Wash.2d 607, 40 P.3d 669 (2002) supports its holding. Majority at 1241. In Westling the court held that the unit of prosecution for second degree arson involving damage to other motor vehicles *1244 is the act of the defendant in causing a single fire that damages vehicles, not each vehicle damaged.[1] RCW 9A.48.030(1) states in part that a person is guilty of second arson if he or she cause "a fire ... which damages ... any... automobile, or other motor vehicle." The court reasoned that the reference to "any" vehicle meant "every" and "all" vehicles damaged. Westling, 145 Wash.2d at 611-12, 40 P.3d 669. The reckless endangerment statute, RCW 9A.36.050(1), provides that "[a] person is guilty of reckless endangerment when he or she recklessly engages in conduct not amounting to drive-by shooting but that creates a substantial risk of death or serious physical injury to another person." Approving the Court of Appeals reasoning, the majority concludes that the language of the reckless endangerment statute, unlike the second degree arson statute, criminalizes conduct that places "another person" at risk, not "any person." Majority at 1241. Thus, the majority determines that, as in Westling, the plain language of the statute indicates the unit of prosecution is each person endangered.
Westling does not support the majority's holding. First, the majority reads Westling much too broadly. Westling itself cautions that the word "any" when used in a statute has to be read in context; the court refused to recognize an absolute meaning of the word for all statutes. Westling, 145 Wash.2d at 612 n. 2, 40 P.3d 669. Moreover, Westling does not turn solely on the word "any." Instead, the court was very clear in explaining that the use of the terms "a fire" and "any" vehicle indicated legislative intent that the unit of prosecution is "the causing of `a fire' that damages `any automobile.'" Westling, 145 Wash.2d at 611, 40 P.3d 669. It was just as important to the analysis that the legislature spoke of "one fire." Westling, 145 Wash.2d at 612, 40 P.3d 669.
Second, and more importantly, Westling is of little guidance because the reckless endangerment statute does not use either the word "any" or "a" to describe the person or persons endangered. Instead, RCW 9A.36.050(1) states the crime is committed when "[a] person ... recklessly engages in conduct... that creates a substantial risk ... to another person." (Emphasis added.) It is appropriate to consider dictionary definitions of the word "another." See, e.g., In re Personal Restraint of Tortorelli, 149 Wash.2d 82, 91, 66 P.3d 606 (2003); Concerned Ratepayers Ass'n v. Pub. Util. Dist. No. 1, 138 Wash.2d 950, 951, 983 P.2d 635 (1999). Relevant definitions of "another" include "different or distinct from the one first named or considered" ("another" as an adjective), and "one other than oneself" ("another" as a pronoun). Webster's Third New International Dictionary 89 (1993). In context, therefore, the reference to "another person" in RCW 9A.36.050(1) means the risk is created to one other than the actor engaging in the conduct (who is the first person identified in the statutory definition of the crime). That is, the offense is not committed when the only person endangered is the defendant.
The majority next "`stand[s] on the mountaintop and look[s] down on the larger field of the criminal law in perspective,'" relying on a Maryland intermediate appellate court case, Albrecht v. State, 105 Md.App. 45, 58, 658 A.2d 1122 (1995). Majority at 1241. The majority agrees with the Maryland court that reckless endangerment is an inchoate crime and that when examined in relationship to the range of consummated crimes that are one or two steps removed, it is apparent that reckless endangerment is a crime against persons and should be treated the same as the consummated crimes. Majority at 1241-42. Thus, just as two homicides can be charged where vehicular homicide is committed and two persons are killed, or two vehicular assaults charged where two persons are injured, so should multiple counts of reckless endangerment be sustained where there are multiple persons endangered. Majority at 1242.
*1245 The Maryland court's opinion does not support the majority's holding. First, the analysis is fundamentally flawed because it assumes that the "inchoate" crime necessarily equates to a consummated "choate" crime a step or two removed. But the "inchoate" crime never develops into a completed "choate" crime and thus the assumption rests on speculation. Second, this speculation becomes more apparent upon recognition that reckless endangerment is quite distinct from crimes like vehicular homicide and vehicular assault because in the latter cases the victims of the crimes suffer actual injury. In contrast, RCW 9A.36.050(1) does not contain any requirement of harm to the person or persons endangered. Indeed, the offense of reckless endangerment can be committed without the person endangered even being aware of the risk of death or serious physical injury. Finally, an appellate court's responsibility when determining the unit of prosecution under a statute is to ascertain what the legislature intended, and this is a matter of statutory construction. A court should not determine the unit of prosecution based upon its examination of the "larger field of criminal law" and criminal theory, and should not use its own view of how a particular crime fits into the entire scheme of criminal law as the basis for defining the unit of prosecution.
Finally, the majority concludes that comparison of the reckless endangerment statute and the reckless driving statute supports its holding because if the unit of prosecution for reckless driving is not each person endangered, then the crime of reckless endangerment, when arising from an automobile accident, would be indistinguishable from the crime of reckless driving. Majority at 1242-43. This is simply incorrect. The crime of "reckless driving" is defined as driving "any vehicle in willful or wanton disregard for the safety of persons or property." RCW 46.61.500. As the Court of Appeals held in State v. Amurri, 51 Wash.App. 262, 266-67, 753 P.2d 540 (1988), the reckless driving statute "does not require disregard for others' safety" and the State does not have to prove that "other persons or property were put at risk to sustain a conviction for reckless driving." In contrast, the crime of reckless endangerment does require placing another person at risk. Thus, if the unit of prosecution for reckless endangerment is the endangering conduct, the crime is not committed unless another person is put at risk, quite unlike reckless driving. It is not true that the crimes would be indistinguishable if the unit of prosecution is the endangering conduct.
The unit of prosecution for a crime may be an act or a course of conduct. United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 225-26, 73 S.Ct. 227, 97 L.Ed. 260 (1952); State v. Root, 141 Wash.2d 701, 710, 9 P.3d 214 (2000); State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998). Here, the court should hold that the unit of prosecution for reckless endangerment is a course of conduct recklessly endangering another. It makes no difference whether one other person is endangered or more than one. First, as explained, RCW 9A.36.050(1) supports this result because it refers to a person creating a substantial risk of death or serious physical injury to another person. The statute's plain language shows legislative intent that someone other than the defendant must be placed at risk. Second, as also noted, the statute does not require that the person or persons endangered be aware of the risk of death or injury. Thus, the legislature has proscribed the conduct that creates a substantial risk of death or serious injury; the focus of the statute is on the defendant's conduct creating the risk, not on the effect of the defendant's conduct on another person or persons. Third, if the unit of prosecution is each person endangered, then multiple convictions can result where the defendant's conduct is identical, his or her mental state is identical, the effect experienced by the other person or persons is identical (because they need not even know of the risk), and the only difference is the fortuity of the number of persons endangered.
Holding that the unit of prosecution is a course of endangering conduct would not mean that a defendant who engages in conduct amounting to reckless endangerment could never be convicted of multiple counts. For instance, the Tennessee Court of Criminal Appeals explained in State v. Ramsey, 903 S.W.2d 709, 713 (Tenn.Crim.App.1995) *1246 that it was unnecessary to adopt "a blanket rule that provides that a defendant's continuous operation of a vehicle may only result in one act of reckless endangerment" because factual circumstances differ. For example, the distances involved and the time between acts comprising the reckless conduct could indicate either a single course of conduct or more than one course of conduct. Id. The trier of fact would have to make the determination whether the defendant's conduct constituted one or more courses of conduct, i.e., one or more crimes.
It is important that, when determining what constitutes the unit of prosecution for an offense, a court avoid coloring the analysis with policy considerations that are rightfully the province of the legislature and avoid substituting its own judgment for that of the legislature. A court must also avoid construing the relevant statute in a way that allows "overzealous prosecutors seeking multiple convictions" to charge and obtain convictions for multiple violations of the same statute based on distinctions that are not warranted by the statute. Adel, 136 Wash.2d at 635, 965 P.2d 1072 (citing Brown v. Ohio, 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)). Unfortunately, the majority's holding allows for multiplying charges based solely on the number of persons endangered even though a fair reading of the reckless endangerment statute does not lead to the conclusion that the unit of prosecution is each person endangered.
I dissent.
NOTES
[1] See Orange, 152 Wash.2d at 816 n. 4, 100 P.3d 291 (citing State v. Calle, 125 Wash.2d 769, 777, 888 P.2d 155 (1995); State v. Roybal, 82 Wash.2d 577, 580-81, 512 P.2d 718 (1973); Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)).
[2] The dissent asserts that "Westling is of little guidance because the reckless endangerment statute does not use either the word `any' or `a' to describe the person or persons endangered." Dissent at 1244. To the contrary, Westling is on point precisely because the reckless endangerment statute does not refer to "any other person" but refers instead to "an other person." By common understanding and as a historical fact, the pronoun "another" is a compound of "an + other," and the indefinite article "an" means "a," the letter n being an addition before a following vowel sound. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 89, 75 (2002).
[1] RCW 9A.48.030(1) provides:

A person is guilty of arson in the second degree if he knowingly and maliciously causes a fire or explosion which damages a building, or any structure or erection appurtenant to or joining any building, or any wharf, dock, machine, engine, automobile, or other motor vehicle, watercraft, aircraft, bridge, or trestle, or hay, grain, crop, or timber, whether cut or standing or any range land, or pasture land, or any fence, or any lumber, shingle, or other timber products, or any property.