[No. 24787-2-III. Division Three. February 6, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. VASILIY A. USTIMENKO, *Appellant*.

*William D. Edelblute,* for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Kevin M. Korsmo, Deputy,* for respondent.

¶1 SCHULTHEIS, J. — Following a drunken attack on a pedestrian and a hit-and-run collision, Vasiliy Ustimenko was arrested and charged with second degree assault, driving under the influence of alcohol, two counts of reckless driving, and three counts of failure to remain at the scene of an accident. Mr. Ustimenko's motion to suppress statements he made to the investigating officers was granted in part (for statements made before the officers read him his *Miranda*[1] rights) and denied in part (for statements made after he was read his rights). He pleaded guilty to one of the counts of failure to remain at the scene (hit-and-run). After a bench trial, the trial court dismissed one count of reckless driving and two counts of hit-and-run, convicting him of the remaining three charges.

¶2 On appeal, Mr. Ustimenko challenges the admission of his statements. The State cross-appeals the trial court's dismissal of two of the hit-and-run counts. We conclude that Mr. Ustimenko's post-*Miranda* statements were properly admitted. Because we also conclude that the three counts of hit-and-run constituted one unit of prosecution, we find that the trial court properly dismissed two of the counts. Accordingly, we affirm.

FACTS

¶3 In late July 2004, Mr. Ustimenko drove around south Spokane one evening while under the influence of alcohol.

---

[1] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

As he drove rapidly down Cliff Drive, a pedestrian yelled to him to slow down. Mr. Ustimenko stopped his car, he and his passenger jumped out, and the two young men confronted the pedestrian. After an exchange of profanities, Mr. Ustimenko head-butted the pedestrian and the two began fighting. Another car, carrying Mr. Ustimenko's friends, stopped and four young males jumped out to join in the fray. All of the young men began assaulting the pedestrian. Mr. Ustimenko got back in his car, attempted to hit another pedestrian who observed the scene, and sped away.

¶4 A few minutes later, Mr. Ustimenko ran a red light in downtown Spokane and slammed broadside into a vehicle driven by Robyn Twitty. She and her baby were injured. Mr. Ustimenko's car came to rest against a signpost owned by a local tavern. As soon as Mr. Ustimenko got out of his car, he ran to another vehicle driven by friends and he left the scene at a high rate of speed. Officers who arrived at the scene of the accident found a car registered to Mr. Ustimenko's father and a wallet lying on the ground nearby containing a driver's license and Social Security card issued to Mr. Ustimenko.

¶5 Officers then went to the Spokane County address on the vehicle registration and parked at the bottom of a long driveway. As the officers walked up the driveway, they met Mr. Ustimenko walking toward them. He smelled of alcohol, had slurred speech, was swaying, and had fresh injuries on his hands and head. The officers asked him to sit down. When they asked him where his car was, he said it had been stolen earlier that night. He explained that his injuries were caused by a fall a couple of days earlier. As the officers began handcuffing him and advising him of his constitutional rights, he stated, " 'I tell you what happened. I was driving.' " Report of Proceedings (RP) at 36. The officers continued reading the *Miranda* rights as Mr. Ustimenko stated, without prompting, " 'I was in an accident.' " RP at 37.

¶6 Mr. Ustimenko was taken to the public safety building for the testing of a breath sample and was advised again of his constitutional rights. Before he took the breath analysis test, an officer advised him of his rights a third time. Each time, he indicated that he understood his rights. The breath analysis showed that he was intoxicated.

¶7 Mr. Ustimenko was charged with count 1: second degree assault of the first pedestrian (RCW 9A.36.021(1)(a)); count 2: reckless driving (RCW 46.61.500); counts 3 and 4: failure to remain at the scene of an accident (injured person) (RCW 46.52.020(4)); count 5: failure to remain at the scene of an accident (attended vehicle or other property) (RCW 46.52.020(2)); count 6: reckless driving (RCW 46.61-.500); and count 7: driving while under the influence of intoxicating liquor (RCW 46.61.502). He moved to suppress all statements he made to the officers, both before and after he was read his *Miranda* rights. The trial court ruled that the statements made in response to questions before the advisement of rights (such as that his car had been stolen) were excluded and the spontaneous statements made during the advisement of rights were admitted. All statements made after the advisement of rights were admitted as knowing and voluntary.

¶8 During the bench trial, Mr. Ustimenko pleaded guilty to count 3, the hit-and-run injury accident involving Ms. Twitty. After the State rested its case, the trial court dismissed counts 4 and 5 (hit-and-run, involving Ms. Twitty's baby and the damage to the signpost) because those counts arose from the same act that was the basis for count 3. The trial court found Mr. Ustimenko guilty of the remaining counts. This appeal and cross-appeal timely followed.

### SUPPRESSION OF POST-*MIRANDA* STATEMENTS

¶9 Mr. Ustimenko contends the trial court erred in denying his CrR 3.5 motion to suppress statements made after he was advised of his *Miranda* rights. He argues that

he let the " 'cat out of the bag' " when he made custodial statements pre-*Miranda*, and that this poisoned all statements made post-*Miranda*. Appellant's Br. at 12.

■ ■ ¶10 CrR 3.5 requires that when the State will offer a statement of the accused as evidence, the court must hold a hearing to determine whether the statement is admissible. Generally, statements made while an accused is in custodial interrogation are not admissible unless the accused was first advised of his constitutional right to counsel and his privilege against self-incrimination (*Miranda* rights). *State v. Lavaris*, 99 Wn.2d 851, 856, 664 P.2d 1234 (1983) (citing *Miranda*, 384 U.S. at 444). While in custody, an accused's pre-*Miranda* statements are presumed involuntary due to the coercive nature of custodial interrogations. *Oregon v. Elstad*, 470 U.S. 298, 305, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985). Once warned, however, the accused is "free to exercise his own volition in deciding whether or not to make a statement to the authorities." *Id.* at 308. Absent "deliberately coercive or improper tactics" used to obtain the pre-*Miranda* statement, advisement of the *Miranda* rights will allow the accused to make a rational choice whether to invoke those rights or to waive them. *Id.* at 314.

■ ¶11 *Miranda* warnings protect an accused's right not to make incriminating statements while in police custody. *State v. Lorenz*, 152 Wn.2d 22, 36, 93 P.3d 133 (2004). This court reviews the trial court's custodial determination de novo. *Id.* In determining whether an accused was in custody at the time of questioning, we use an objective test: "whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest." *Id.* at 37. Here, the trial court concluded that Mr. Ustimenko was in custody as soon as the police approached and asked him to sit down. The court based this conclusion on the fact that the officers testified that they already thought they had probable cause to arrest Mr. Ustimenko when they encountered him. But a police officer's subjective intent has no relevance to the

determination of custody. *Id.* Not only is it irrelevant whether Mr. Ustimenko was the focus of the police investigation, but it is also irrelevant whether he was in a coercive environment when he was questioned. *Id.* The only relevant question is whether a reasonable person in his position would believe his freedom of action was curtailed. *State v. Short*, 113 Wn.2d 35, 41, 775 P.2d 458 (1989).

¶12 Under these circumstances, we find that Mr. Ustimenko was not actually in custody when the officers asked him where his car was and how he got his injuries. The officers met him on the long driveway, noticed he was swaying on his feet, and asked him to sit down. He did not claim that he was ordered to obey. The officers did not tell him he was being detained, and he did not ask to leave. A reasonable person in Mr. Ustimenko's position would not believe he was in police custody with a loss of freedom associated with formal arrest. *Lorenz*, 152 Wn.2d at 37-38. Accordingly, the questioning was not custodial and his statements during that initial encounter should have been admitted into evidence. *Id.* at 38.

¶13 Even if the pre-*Miranda* statements were not admissible, however, the post-*Miranda* statements were properly admitted. Unless a prior unwarned statement was actually coerced, subsequent *Miranda* warnings provide the accused a choice whether to exercise the privilege to remain silent. *Elstad*, 470 U.S. at 310-11. Mr. Ustimenko's response to the officers' questions regarding the whereabouts of his car and the nature of his injuries was not coerced. There is no evidence that the officers attempted to undermine his ability to exercise free will. *Id.* at 309. That he may have let "the cat out of the bag" in his responses is irrelevant to the admissibility of his post-*Miranda* statements. *State v. Allenby*, 68 Wn. App. 657, 661, 847 P.2d 1 (1992) (citing *Elstad*, 470 U.S. at 311).

THE UNIT OF PROSECUTION

¶14 The hit-and-run statute, RCW 46.52.020, may be violated in two ways: either by unlawfully leaving the

scene of an accident resulting in injury to or death of "any person," or by unlawfully leaving the scene of an accident resulting in damage to a vehicle or other property. In either case, the driver involved in the accident must remain at the scene of the accident to give his or her identification information and to render assistance to "any person injured in such accident." RCW 46.52.020(3).

¶15 Mr. Ustimenko was charged with three counts of hit-and-run, including one count related to Ms. Twitty, one count related to her baby, and one count related to the damaged signpost. Citing *State v. Bourne*, 90 Wn. App. 963, 954 P.2d 366 (1998), a case out of Division Two of this court, the trial court dismissed the counts related to the baby and the signpost because the evidence supported only one conviction for a crime involving multiple victims. The State cross-appeals this decision.

¶16 As noted in *Bourne*, RCW 46.52.020 is ambiguous regarding the number of counts that can be charged for failing to render assistance. 90 Wn. App. at 971. Although the legislature apparently intended to impose a duty to render assistance to all injured persons, it is not clear whether the defendant should be liable for each injured person he or she fails to assist. *Id.* Due to this ambiguity, *Bourne* applied the rule of lenity and held that "the number of counts with which a defendant should be charged should be based on the number of times he is involved in an accident but fails to immediately stop, render assistance, and provide the specified information." *Id. Bourne* concluded that although three people were injured in the accident, the defendant could be charged and convicted only for the number of times he failed to stop, render aid, and provide the necessary information, not for the number of people involved. *Id.* at 974.

¶17 *Bourne*'s reasoning is supported by recent applications of the "unit of prosecution" test for determining whether multiple charges constitute the same offense. In *State v. Graham*, 153 Wn.2d 400, 405, 103 P.3d 1238 (2005),

for instance, the Supreme Court held that in deciding whether a statute can be violated multiple times in the same incident, the court must determine the scope of a criminal act (the unit of prosecution). If the unit of prosecution is not clearly indicated, the rule of lenity must be applied. *Graham*, 153 Wn.2d at 405.

¶18 In *Graham*, the crime at issue is reckless endangerment, described as reckless conduct " 'not amounting to drive-by shooting but that creates a substantial risk of death or serious physical injury to another person.' " *Id.* (quoting RCW 9A.36.050(1)). Citing *State v. Westling*, 145 Wn.2d 607, 40 P.3d 669 (2002), *Graham* notes that when a statute refers to damage to "any" property or person, the intent is to convict only once when a criminal act damages multiple items or people. 153 Wn.2d at 405-06. The second degree arson charged in *Westling* criminalizes the setting of a fire that damages " 'any' " property. 145 Wn.2d at 610-11 (quoting RCW 9A.48.030(1)). The reckless endangerment statute charged in *Graham*, on the other hand, criminalizes conduct that places "another" person at risk. 153 Wn.2d at 406. According to *Graham*, a statute that "proscribes conduct that places at risk not simply *any* person but '*another* person' " plainly intends one unit of prosecution per victim. *Id.* at 406 (quoting RCW 9A.36.050(1)).

¶19 The hit-and-run statute requires a driver involved in an accident to stay at the scene long enough to give the required identification information to "any person" injured or occupying the struck vehicle and to render reasonable assistance to "any person injured." RCW 46.52.020(3). Consistent with the analysis of *Graham* and the reasoning of *Bourne*, RCW 46.52.020 authorizes the imposition of only one conviction when multiple people and items of property are damaged by a driver's failure to stop, identify himself or herself, and render assistance. The unit of prosecution is the act of leaving the scene of an accident without giving assistance and the required information, not the failure to give assistance and information to a particular individual. *Westling*, 145 Wn.2d at 611-12; *Bourne*, 90 Wn. App. at 974.

Accordingly, the trial court did not err in dismissing the two additional counts of hit-and-run.

¶20 Affirmed.

SWEENEY, C.J., and BROWN, J., concur.