**FILED**
**JULY 16, 2019**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35958-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LICO LAVAR MCKINNIE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — A trial court found Lico McKinnie guilty of

attempted first degree assault and first degree robbery. McKinnie appeals, and argues

double jeopardy jurisprudence requires his attempted first degree assault conviction to be

vacated. We agree and vacate that conviction. By motion, McKinnie requests that we

direct the trial court to strike the criminal filing fee cost and the deoxyribonucleic (DNA)

collection fee. The State does not oppose McKinnie's motion, and we grant it.

In a statement of additional grounds for review (SAG), McKinnie raises six grounds for reversing one or both of his convictions. We decline to reverse his conviction for first degree robbery.

FACTS

On August 31, 2016, Desirae McMichael left her apartment with a bag of garbage, got in her car, and stopped near the apartment complex's dumpster to dispose of the trash. She left her car door open and her car running. McKinnie jumped inside and began to drive away.

McMichael then jumped on the hood of her car, but McKinnie accelerated. Multiple witnesses saw McKinnie repeatedly swerving and driving very fast through the parking lot while McMichael held onto the hood of her car. McMichael screamed for help and for McKinnie to stop. As McKinnie turned out of the parking lot, McMichael fell to the ground and was struck by a tire.

Ten minutes later, McKinnie crashed McMichael's car into another car. McMichael's car was severely damaged, and McKinnie did not flee far. A nearby officer apprehended McKinnie and later learned that the damaged car was stolen.

McMichael sustained serious injuries, including abrasions to her face and knee, a concussion, and permanent nerve damage to her leg.

2

*Trial*

The State charged McKinnie with attempted first degree assault of McMichael and first degree robbery of her car. McKinnie waived his right to a jury trial. The State's witnesses testified consistent with the facts above.

McKinnie also testified. He testified he was visiting a friend on the second floor of the apartment complex. Outside his friend's window, he saw a short Hispanic man with a bandana around his face holding a pistol. He then jumped out the window, hurt his ankle, and saw the Hispanic man and others. Thinking they were going to kill him, he made use of McMichael's car after she hopped out. He testified he did not stop after McMichael jumped on the car because he was being chased by a truck and feared for his life.

No witness testified to seeing a Hispanic man with a bandana or a truck chasing McKinnie. One witness testified to seeing McKinnie drop from an upper floor window, hurt himself, and then wait around for about 10 minutes before taking McMichael's car.

The trial court did not find McKinnie's story credible. It found McKinnie guilty of both charges and entered findings of fact and conclusions of law.

Thereafter, the trial court entered a judgment of conviction for both offenses. The judgment reflects McKinnie's offender score of 9+ for both offenses. For the attempted

first degree assault conviction, the judgment shows a seriousness level of XII, a standard

range of 180-238.5 months, but a maximum term of 120 months. For the first degree

robbery conviction, the judgment shows a seriousness level of IX, and a standard range of

129-171 months. The trial court imposed a sentence of 120 months for the attempted first

degree assault conviction, and 165 months for the first degree robbery conviction. It

ordered the sentences to be served concurrently for a total sentence of 165 months.

McKinnie appealed to this court.

## ANALYSIS

McKinnie contends that his conviction for attempted first degree assault violates

the prohibition against double jeopardy.

A.     DOUBLE JEOPARDY

*Standard of Review*

The proper interpretation and application of the double jeopardy clauses of the

Fifth Amendment to the United States Constitution and article I, section 9 of the

Washington Constitution are questions of law that are reviewed de novo. *In re Pers.*

*Restraint of Francis*, 170 Wn.2d 517, 523, 242 P.3d 866 (2010).

### 1. Reviewability of unpreserved error

Citing RAP 2.5(a), the State correctly notes that this court generally refrains from reviewing unpreserved errors. But RAP 2.5(a)(3) permits review of unpreserved claims of error if they involve a manifest error affecting a constitutional right. The State argues the purported error is not prejudicial because McKinnie has an offender score of 9+ and vacation of his assault conviction would not reduce his sentence. McKinnie responds that he is prejudiced by a conviction that the legislature did not intend.

One consideration for whether a claim is manifest is whether the facts are sufficiently developed to review it. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). Because the facts are sufficiently developed for us to review McKinnie's constitutional claim, we exercise our discretion and review it.

### 2. General principles of double jeopardy

The guarantee against double jeopardy protects persons from multiple punishments for the same offense. *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). "A court entering multiple convictions for the same offense violates double jeopardy." *Francis*, 170 Wn.2d at 523. "Because the legislature has the power to define offenses, whether two offenses are separate offenses hinges upon whether the legislature intended them to be separate." *Id.*

5

### 3. *Express or implied legislative intent*

Washington courts look first to the statutory language to determine if the legislature expressly intended multiple punishments for two offenses. *State v. Jackman*, 156 Wn.2d 736, 746, 132 P.3d 136 (2006). Here, the relevant statutes provide no express statements whether attempted first degree assault and first degree robbery are intended to be punished separately. *See* RCW 9A.36.011(1)(a); RCW 9A.28.020(1); RCW 9A.56.200.

Washington courts also look to any implied legislative intent to determine if the legislature intended multiple punishments for two offenses. *State v. Freeman*, 153 Wn.2d 765, 775, 108 P.3d 753 (2005). When a court vacates a conviction on double jeopardy grounds, it usually vacates the conviction for the crime that forms part of the proof of the other. *Id.* This is because the greater offense typically carries a penalty that incorporates punishment for the lesser included offense. *Id.*

The *Freeman* court noted that when first degree assault raises a robbery to first degree, the case is atypical because first degree assault carries a *longer* standard range sentence than first degree robbery. *Id.* The *Freeman* court concluded that this sentencing anomaly implied the legislature intended to punish first degree assault and first degree robbery separately. *Id.* at 776.

6

The State argues that *Freeman* requires us to affirm the attempted first degree assault conviction; whereas McKinnie argues that *Freeman* supports the opposite result. Despite the parties' arguments, we do not discern any implied legislative intent in this situation. Like the result in *Freeman*, the seriousness level for attempted first degree assault, XII, is higher than that for first degree robbery, IX. But unlike the result in *Freeman*, because attempted first degree assault is a class B felony, the maximum sentence of 10 years is shorter than McKinnie's standard range sentence for first degree robbery, given his 9+ offender score. The evidence of implied legislative intent is mixed, so we do not discern any implied legislative intent.

### 4.     *Other evidence of legislative intent*

If it is unclear whether the legislature intended to punish the two crimes separately, we discern legislative intent by first applying the *Blockburger*[1] test and then the merger doctrine. *Francis*, 170 Wn.2d at 523. These two considerations inform but do not compel our outcome. *Id.* The underlying question remains whether the legislature intended the offenses to be the same. *Id.* This determination is made on a case-by-case basis. *Id.*

---

[1] *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 305 (1932).

a.       Blockburger *test*

Under *Blockburger*, also known as the "same evidence" test, if each crime contains an element that the other does not, we presume the crimes are not the same offense for double jeopardy purposes. *Freeman*, 153 Wn.2d at 772. We look to the nature of the offenses as they were actually charged and proved. *Francis*, 170 Wn.2d at 535 (Madsen, C.J., concurring).

Here, attempted first degree assault contains different elements than first degree robbery. As charged and proved, attempted first degree assault required the State to prove that McKinnie, with intent to commit the crime of first degree assault, intended to inflict great bodily harm on McMichael by force or means likely to produce *great bodily harm or death*. As charged and proved, first degree robbery required the State to prove that McKinnie, with the intent to commit theft, took McMichael's car by use of immediate force *and inflicted injury upon her*. Here, proof of great bodily harm was required to obtain a conviction for attempted first degree assault, but such proof was not required to obtain a conviction for first degree robbery. In addition, proof that McKinnie intended to commit theft was required for first degree robbery, but such proof was not required to obtain a conviction for attempted first degree assault. Under the *Blockburger* test, the two crimes are thus separate.

###### b. *Merger doctrine*

The merger doctrine is a tool of statutory interpretation used to determine whether the legislature intended to impose multiple punishments for a single act that violates several statutory provisions. *State v. Michielli*, 132 Wn.2d 229, 238, 937 P.2d 587 (1997). When the conduct of one offense elevates the degree of the second offense, the offenses merge to avoid double jeopardy. *State v. Vladovic*, 99 Wn.2d 413, 419, 662 P.2d 853 (1983). Here, it is clear that an assault elevates the degree of robbery from second degree to first degree.

But there exists a well-established exception to the merger doctrine: when the two crimes have an independent purpose or effect, they can be punished separately even though one crime forms part of the other. *Freeman*, 153 Wn.2d at 773.

> An assault is frequently committed as part of the commission of some other crime. *In such a case, the defendant cannot be convicted of both assault and the other crime, unless the assault involves some injury that is separate and distinct from the other crime, and not merely incidental to it.* This remains true even if the assault involved the infliction of bodily harm beyond the minimum required to constitute the other crime. On the other hand, a defendant can be separately convicted for an assault that did not further the commission of the underlying crime. There can also be a separate conviction for an assault committed after completion of the other crime, whether for the purpose of escape or to aid commission of a new crime.

13A SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 305(5) at 45-46 (2d ed. 1998) (emphasis added).

Here, McKinnie did not commit first degree robbery until he used actual force to take McMichael's car.  That is, first degree robbery did not occur by virtue of McKinnie jumping into McMichael's open and running car.  First degree robbery occurred only when McMichael jumped on the hood of her car and McKinnie used force by swerving and accelerating the car in an attempt to dislodge her.  Here, McMichael's injury was not separate and distinct from the conduct that formed first degree robbery.

Under the particular facts here, where the acts that underlie the attempted first degree assault conviction were not separate and distinct from the acts that underlie the first degree robbery conviction, we conclude that the legislature did not intend to punish offenders separately for attempted assault.  We, therefore, conclude that McKinnie's conviction for attempted first degree assault must be vacated so as not to offend double jeopardy.

McKinnie concedes that resentencing is not required because the vacated sentence was a lesser concurrent sentence.  We nevertheless direct the trial court to enter either an amended judgment or an order noting that the attempted first degree assault conviction has been vacated.

B.     STRIKING OF CRIMINAL FILING FEE AND DNA COLLECTION FEE

McKinnie filed a motion requesting that we direct the trial court to strike the $200

criminal filing fee cost and the DNA collection fee imposed by the trial court.  By letter

dated October 23, 2018, we directed the State, if it wished to respond to McKinnie's

motion, to do so in its respondent's brief.  The State declined to respond.

In *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), the court held that

House Bill 1783 applies prospectively to cases pending on direct review as of June 7,

2018, when the bill was enacted.  This case was pending on direct review as of that date.

House Bill 1783 therefore applies to this case.

House Bill 1783 prohibits a trial court from imposing the $200 criminal filing on

indigent defendants.  *Id.* at 749.  Here, McKinnie is indigent.  We therefore grant

McKinnie's request and direct the trial court to strike the $200 criminal filing fee.

House Bill 1783 also prohibits a trial court from imposing the $100 DNA

collection fee against an offender whose DNA has been previously collected.  LAWS OF

2018, ch. 269, § 18.  Since 1994, persons convicted of a felony have been required to

provide a DNA sample.  *See* RCW 43.43.754(1)(a).  McKinnie, who has a 9+ offender

score, has been convicted of numerous felonies.  It is almost certain that McKinnie's

DNA has been previously collected.  On remand, we direct the trial court to strike the

11

$100 DNA collection fee unless the State establishes that McKinnie has not had his DNA previously collected.

C.      STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

McKinnie submits six additional grounds for this court's review.

SAG 1: REASONABLE DOUBT OF ATTEMPTED FIRST DEGREE ASSAULT

McKinnie claims that the court erred by convicting him of attempted first degree assault.  Because we conclude that this conviction must be vacated, SAG 1 is moot.

SAG 2: PROSECUTORIAL MISCONDUCT

McKinnie contends the prosecutor committed misconduct by withholding medical records from him in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).  He claims that these medical records contradicted the victim's testimony regarding her injuries.

Issues that involve facts or evidence not in the record are properly raised through a personal restraint petition, not an SAG.  *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).  Because McKinnie refers to medical records that are not part of the record, we will not address this claim.

No. 35958-1-III
*State v. McKinnie*

SAG 3: *MIRANDA*[2] VIOLATION

McKinnie claims that law enforcement committed a *Miranda* violation following

the car accident and prior to his arrest.  He alleges the trial court erred by concluding that

he was not in custody when he made voluntary statements to law enforcement.

Following a CrR 3.5 hearing as to the admissibility of McKinnie's prearrest

statements, the court made the following findings of fact:

1. On August 31, 2016, Trooper Taylor responded to a location on State Route 2 regarding a 2-car collision.
2. The defendant was observed driving a silver vehicle that was involved in the collision.
3. The defendant got out of the car and walked towards Trooper Taylor.
4. Trooper Taylor noticed that the defendant was slightly limping.
5. Trooper Taylor then questioned the defendant regarding his involvement in the collision and his association with the silver vehicle.

Clerk's Papers (CP) at 59-60 (Findings of Fact and Conclusions of Law—CrR 3.5

Hearing).  From the foregoing findings of fact, the court made the following conclusions

of law:

1. The defendant was not under arrest when he initially contacted Trooper Taylor.
2. Trooper Taylor's questioning of the defendant was part of a routine, general investigation in which the defendant voluntarily cooperated.
3. The defendant's statements to Trooper Taylor were made knowingly and voluntarily given.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4.     Trooper Taylor was not required to advise the defendant of his Miranda warnings.

5.     The defendant's statements are admissible in the State's case in chief.

6.     There is no 5th Amendment violation which would warrant the suppression of the defendant's voluntary statements in the case at bar.

CP at 60.

We review alleged *Miranda* violations de novo. *State v. Dykstra*, 127 Wn. App. 1, 7, 110 P.3d 758 (2005). CrR 3.5 provides that when the State will offer a statement of the accused as evidence, the court must hold a hearing to determine whether the statement is admissible. *State v. Ustimenko*, 137 Wn. App. 109, 115, 151 P.3d 256 (2007). Generally, statements made while an accused is in custodial interrogation are not admissible unless the accused was first advised of his or her constitutional right to counsel and privilege against self-incrimination. *Id.* This court reviews the trial court's custodial determination de novo. *Id.* To determine whether a person is in custody for *Miranda* purposes, we ask whether a reasonable person in the individual's position would believe he or she was in police custody to a degree associated with formal arrest. *Id.*

In the present case, Trooper James Taylor arrived at the scene of a car accident and observed two cars that had been in an accident. The people gathered around the cars informed him that a third car had been involved in the accident, but had left the scene. As

Trooper Taylor was speaking with the witnesses, the third car came driving by, "spouting smoke," and the witnesses informed him that it was the car involved in the accident. Report of Proceedings (Oct. 2, 2017) at 20. The car headed toward the south entrance of the parking lot, made a u-turn and approached Trooper Taylor. As Trooper Taylor walked toward the car, McKinnie exited and limped toward Trooper Taylor. Trooper Taylor asked if McKinnie was okay and asked about the car collision. McKinnie acknowledged that he hit one of the cars and then he gave an account of how he had jumped out of an apartment building because he was being chased.

Trooper Taylor asked if McKinnie was the registered owner of the car and McKinnie acknowledged that he was not, but that the owner had winked and nodded to give him permission to drive it.

The conversation paused while Trooper Taylor approached the car McKinnie had been driving. The car was still running and was emitting large amounts of smoke. Trooper Taylor then saw a woman's purse and wallet lying on the passenger's seat.

McKinnie was then transported to Sacred Heart Medical Center for his injuries.

The court held that Trooper Taylor was at the scene to investigate the traffic collision. McKinnie voluntarily exited his car and walked toward Trooper Taylor. Trooper Taylor only asked routine questions about the collision and attempted to

No. 35958-1-III
*State v. McKinnie*

determine McKinnie's identity and the identity of the registered owner of the car. For

purposes of *Miranda*, the court held that McKinnie was not subjected to custodial

interrogation.

We agree that McKinnie was not in custody when the questioning occurred.

Trooper Taylor's questions were focused on investigating the collision, and Trooper

Taylor was not asking questions that would elicit an incriminating response from

McKinnie with respect to the present charges. Accordingly, a reasonable person in

McKinnie's position would not have felt that he or she was in police custody to a degree

associated with formal arrest. Thus, the court did not err by ruling that McKinnie's pre-

*Miranda* statements were admissible.

SAG 4: SPEEDY TRIAL RIGHT

McKinnie claims that the trial court abused its discretion and violated his speedy

trial rights by putting him through frivolous mental health competency proceedings.

This court reviews alleged speedy trial violations de novo. *State v. Harris*, 122

Wn. App. 498, 504, 94 P.3d 379 (2004).

If a defendant pleads not guilty by reason of insanity, or if the court has reason to

doubt the defendant's competency to stand trial, the court must order an expert evaluation

of the defendant's mental condition. RCW 10.77.060(1)(a). The court may do this on its

16

own motion. RCW 10.77.060(1)(a). The "reason to doubt" language "vests a large measure of discretion in the trial judge." *City of Seattle v. Gordon*, 39 Wn. App. 437, 441, 693 P.2d 741 (1985).

The court rules provide that proceedings related to competency toll the time for trial. CrR 3.3(e)(1).

> The following periods shall be excluded in computing the time for trial:
>     (1) *Competency Proceedings*. All proceedings relating to the competency of a defendant to stand trial on the pending charge, beginning on the date when the competency examination is ordered and terminating when the court enters a written order finding the defendant to be competent.

CrR 3.3(e).

In light of the bizarre explanation that McKinnie gave law enforcement as to how and why he stole McMichael's vehicle, the court was well within its discretion to order a competency proceeding. McKinnie's time for trial was tolled during the pendency of the proceedings. McKinnie's argument that his speedy trial rights were violated fails.

SAG 5: TROOPER TAYLOR'S TESTIMONY

McKinnie claims that the trial court abused its discretion by using Trooper Taylor's testimony to make its findings of guilt. He avers that the court erroneously considered CrR 3.5 statements to make findings when the court stated that it would not.

"[T]he appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Insofar as McKinnie claims that the court improperly considered his pre-*Miranda* statements or Trooper Taylor's statements when making a determination of guilt, we reject his claim. The trial court found McKinnie's testimony at trial not credible because it contradicted numerous other witnesses who testified. We otherwise reject this additional ground for review because it fails to inform this court of the nature of the alleged error.

### SAG 6: MOTION FOR NEW TRIAL: INEFFECTIVE ASSISTANCE OF COUNSEL

McKinnie claims that his motion for a new trial should have been granted based on newly discovered evidence—namely, the medical records of the victim. McKinnie filed a pro se motion for new trial on February 7, 2018. The court's ruling on the motion was not made part of the record. The medical records of the victim are also not part of the present record.

Issues that involve facts or evidence not in the record are properly raised through a personal restraint petition, not a SAG. *Alvarado*, 164 Wn.2d at 569. Accordingly, we will not consider McKinnie's claim concerning the victim's medical records.

18

McKinnie next claims that he received ineffective assistance of counsel when his attorney withdrew from representation and he was not appointed new counsel. To protect a defendant's right to counsel, a defendant has the right to receive effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). An allegation of ineffective assistance of counsel is a mixed question of law and fact that we review de novo. *Id.* at 698. To determine whether counsel provided effective assistance, we apply a two-pronged test: (1) whether counsel's performance was deficient, and (2) whether that deficient performance prejudiced the defendant to an extent that changed the result of the trial. *Id.* at 687. We can address the second prong initially "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Id.* at 697. Even if trial counsel performed deficiently by withdrawing, McKinnie has not established prejudice. McKinnie has not explained what arguments his attorney could have made to merit a new trial. Accordingly, we reject his claim that he received ineffective assistance of counsel.

We affirm McKinnie's conviction for first degree robbery, vacate his conviction for first degree attempted assault, and direct the trial court to strike the criminal filing fee and the DNA collection fee.

No. 35958-1-III
*State v. McKinnie*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, J.

20