# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78274-6-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| JOSEPH LAMAR HOLLAND, | |
| Appellant. | FILED: September 23, 2019 |

CHUN, J. — Joseph Holland appeals the judgment and sentence imposed pursuant to his jury conviction for second degree assault and possession of phencyclidine (PCP). Holland argues that (1) he was denied his right to present a defense when the trial court limited the scope of his expert's testimony, (2) he was deprived of his right to a unanimous jury when the State presented evidence of multiple acts of assault, (3) the evidence was insufficient to establish that he acted recklessly, (4) the aggravating factor in RCW 9.94A.535(3)(y) is unconstitutionally vague, (5) the trial court's findings of fact supporting the exceptional sentence were inadequate, and (6) he received ineffective assistance of counsel.

We remand for the trial court to strike the DNA collection fee from the judgment and sentence. In all other respects, we affirm.

## BACKGROUND

Gordon Murray owns and operates GT Recording Service, a digitizing business on Aurora Avenue North in Seattle. For most of his life, Murray has been completely blind in his left eye and partially blind in his right eye. Murray has an artificial lens implanted in his right eye that enables him to read with that eye, using a magnifying glass.

On the afternoon of October 6, 2016, Murray was at the business along with his wife, Connie Lennstrom, and an employee, Michelle Ressler. A man, later identified as Holland, came in and approached Ressler, who was working at the front counter. Ressler asked Holland twice if she could help him. Each time, Holland simply repeated her question back to her. Murray then approached Holland and asked what he needed. Holland continued to repeat back anything said to him. Finally, Murray calmly asked Holland to leave. Holland initially acted as though he would leave, but then his demeanor changed and he became enraged. He screamed "no" and lunged at Murray, swiping at him. Holland flailed around, kicking the front counter and knocking things over. Murray opened the door, to get Holland to leave, and Holland punched Murray in the face several times. Holland then ran out into the parking lot, screaming.

Lennstrom held the door open to capture a video of Holland on her cell phone while Ressler called 911. Holland dropped into a crouch in the parking lot. Suddenly, Holland charged back towards the store at a full sprint. Murray attempted to close the door but could not do so in time. Holland grabbed Murray

and dragged him out into the parking lot. He knocked Murray onto the ground and proceeded to punch and kick Murray in the face, chest, and stomach.

Passersby pulled Holland off Murray and restrained him until officers arrived. When arrested, Holland was still agitated and yelling, insisting he was "God." At the hospital, a nurse found a vial of PCP in Holland's underwear.

Holland's assault knocked Murray's artificial lens loose and tore the surrounding tissue, requiring surgery. Murray lost a substantial part of his remaining eye function. He experienced frequent pain in his eyes and dizzy spells. His business was also significantly affected because he could not work for more than an hour at most without needing to rest.

The State charged Holland with second degree assault and possession of PCP. The State also alleged as an aggravating factor that "the injuries of the victim of the current offense substantially exceeded the level of bodily harm necessary to satisfy the elements of the crime."

Holland asserted a voluntary intoxication defense, arguing that he could not form the requisite intent because he was under the influence of PCP. A jury convicted Holland as charged and also returned a special verdict finding the State proved the aggravating factor beyond a reasonable doubt. Holland appeals.

## DISCUSSION

### 1. Limitations on Dr. Milner's testimony

Holland argues that the trial court violated his right to present a defense when it prohibited his expert witness from testifying regarding his mental health

3

conditions. Because the witness did not establish a nexus between Holland's mental health conditions and his ability to form the requisite intent for the crime, the trial court did not abuse its discretion in excluding the testimony.

Holland initially asserted both diminished capacity and voluntary intoxication defenses. He retained licensed psychologist Dr. Marnee Milner to "assess [his] cognitive and psychological abilities currently and at the time of the crime." Dr. Milner performed an evaluation of Holland in which she conducted an in-person interview, reviewed Holland's legal and medical records provided by defense counsel, and administered neuropsychological testing. Dr. Milner observed that Holland was cooperative and polite but exhibited a flat affect and some bizarre thought content. Holland disclosed a history of auditory and visual hallucinations, but did not appear to currently be suffering from either. Dr. Milner noted that Holland "appeared to embellish his symptoms" and it was therefore difficult "to comment with certainty on his current psychiatric symptoms."

Dr. Milner noted that Holland's records reflected a history of long-term drug use, intellectual disability and mood and psychotic disorders. She also noted that Holland had a history of "poor frustration tolerance" and "poor coping skills." She admitted she was "not an expert on specific drugs" and was unable to speculate as to the effect that PCP would have on Holland's mental state. Instead, she stated she could opine only generally about the effects of PCP on behavior. But she stated that, based on past history, Holland's "underlying features/deficits increase and he becomes more impulsive, volatile and assaultive when high on illicit drugs."

4

To me it seems that he already has a level of poor frustration tolerance and poor coping skills, and that is due to his mood symptoms – you know, his – his diagnoses, but I think at the time that was completely exacerbated by the drugs.

Dr. Milner did not offer an opinion about Holland's mental state during the assault. And she stated that she was unable to opine at all about diminished capacity or Holland's intent when he assaulted Murray.

The State moved to preclude Dr. Milner from testifying regarding Holland's "underlying cognitive deficits, mood disorders or psychiatric conditions." Citing State v. Atsbeha, 142 Wn.2d 904, 914, 16 P.3d 626 (2001), the State argued that these issues were "not relevant to a diminished capacity defense, because she's not rendering an opinion about diminished capacity." The prosecutor stated:

> So Doctor Milner has told us she cannot connect the Defendant's mental health mood disorder, cognitive deficits with a [sic] asserted inability to form intent at the day of this crime – or when this incident occurred. And if she's not able to do that, the question then becomes, why would that testimony become relevant. How would it assist the jury in making a – a factual determination? And it wouldn't in this case.

> Again, I'm not asking the Court to preclude testimony about being high on drugs. I think defense will be able to lay a foundation for a voluntary intoxication defense. But certainly bringing in all this other evidence about Mr. Holland's mood and psychiatric condition is – is not relevant because the expert did not apply those to a diminished capacity defense.

Holland conceded that Dr. Milner's testimony did not support a diminished capacity defense. But he argued that his mental health conditions were relevant to his voluntary intoxication defense:

> [E]ven if I'm precluded from arguing diminished capacity, the – the baseline of my client, I believe, is relevant in assisting the jury to understand the voluntary intoxication in understanding who my client was, otherwise you're not getting the full picture of how that would be relevant to the application of voluntary intoxication.

5

The trial court granted the State's motion, finding that Dr. Milner was unable to link Holland's mental health conditions to his mental state at the time of the crime:

> The issue is whether or not Mr. Holland was unable to form the specific intent in this case. I believe the Doctor's going to testify that due to the voluntary intoxication he could not, or it would have affected him, but didn't make any association between his underlying mental disorders and that specific intent. She specifically said on more than one occasion there's – she's not saying there's diminished capacity due to any of his mental disorders, so I don't see how it would be relevant or helpful to the jury to allow that evidence in.

Criminal defendants have a constitutional right to present a defense under the Sixth Amendment of the United States Constitution and article I, section 22 of Washington's constitution. State v. Morales, 196 Wn. App. 106, 122, 383 P.3d 539 (2016). But this right is not unfettered, and a defendant does not have a right to offer irrelevant or inadmissible evidence. State v. Ellis, 136 Wn.2d 498, 528, 963 P.2d 843 (1998).

ER 702 requires that expert testimony be helpful to the trier of fact. "Expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." State v. Groth, 163 Wn. App. 548, 564, 261 P.3d 183 (2011).

We review a trial court's decision about the permissible scope of expert testimony for abuse of discretion. State v. Black, 191 Wn.2d 257, 266, 422 P.3d 881, 885 (2018). A trial court abuses its discretion if its decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. Black, 191 Wn.2d at 266.

"Evidence of intoxication and its effect on the defendant may be used to prove that the defendant was unable to form the particular mental state that is an essential element of a crime." State v. Gallegos, 65 Wn. App. 230, 237, 828 P.2d 37 (1992). A defendant is entitled to a voluntary intoxication instruction when "(1) the charged offense has a particular mens rea, (2) there is substantial evidence the defendant was drinking and/or using drugs, and (3) there is evidence the drinking or drug use affected the defendant's ability to acquire the required mental state." State v. Webb, 162 Wn. App. 195, 209, 252 P.3d 424 (2011).

Holland argues that the trial court erred in prohibiting Dr. Milner from testifying regarding his history of mental health issues. As he did below, he contends that testimony that his PCP use "exacerbated underlying mental health issues, including psychotic features, was unquestionably relevant to his defense of voluntary intoxication."

But Dr. Milner's testimony would not have assisted the jury in determining Holland's mental state at the time of the crime. Dr. Milner admitted she could not speculate on the effect that PCP would have on Holland's mental state. And while she believed that drug use made Holland more impulsive and volatile because it exacerbated his already poor coping skills, at no point did she state that his drug use – either alone or coupled with his mental health issues – rendered him unable to form the mens rea for assault. When asked about Holland's mental state at the time of the crime, Dr. Milner stated:

I didn't really give . . . a really clear conclusion because in – in essence at the time I think he had these same underlying issues that he currently has. So there's some level of mood disorder, there's some level of psychotic symptoms present, but for the most part, based on . . .what I – I was able to – to gather was that . . . he was high on drugs. And so some [of] the behavior – a – a lot of the behavior that you were seeing to me seemed more drug related behavior.

If the opinion of an expert does not reliably connect the defendant's mental disorder to an inability to form the requisite intent, the evidence is not helpful to the trier of fact. Atsbeha, 142 Wn.2d at 918. The trial court did not abuse its discretion in limiting Dr. Milner's testimony.

2. Right to a unanimous jury

Holland argues that he was deprived of his right to a unanimous jury. He contends that the State presented evidence of two distinct acts of assault that could have formed the basis for the crime, but did not make an election and no unanimity instruction was given. Because the two assaults were part of a continuing course of conduct, no election or unanimity instruction was needed.

A criminal defendant has a right to a unanimous jury verdict under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. State v. Fisher, 165 Wn.2d 727, 755, 202 P.3d 937 (2009) (citing State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988)). We review constitutional errors de novo. State v. Jorgenson, 179 Wn.2d 145, 150, 312 P.3d 960 (2013).

When the State presents evidence of several acts that could constitute the charged crime, the jury must agree unanimously on which act constituted the charged crime. Kitchen, 110 Wn.2d at 411. Either the State must elect the act

8

on which it relies or the court must instruct the jury to agree unanimously as to what act or acts the State proved beyond a reasonable doubt. Kitchen, 110 Wn.2d at 411. Failure to do so is constitutional error because of "the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." Kitchen, 110 Wn.2d at 411.

But "the State need not make an election and the trial court need not give a unanimity instruction if the evidence shows the defendant was engaged in a continuing course of conduct." State v. Fiallo–Lopez, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995) (internal quotation and citation omitted). Washington courts have defined a continuing course of conduct as "an ongoing enterprise with a single objective." State v. Love, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). To determine whether criminal conduct constitutes one continuing act, the trial court must evaluate the facts in a commonsense manner. State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). A reviewing court will consider "(1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate purpose." State v. Brown, 159 Wn. App. 1, 14, 248 P.3d 518 (2010) (citing Love, 80 Wn. App. at 361).

Here, the two assaults were part of a continuing course of conduct. The time between the assaults was brief, long enough only for Ressler to call 911 and Lennstrom to begin recording Holland on her phone. Murray did not even have time to close the door. Moreover, they were committed against the same victim and took place in the same location, near the entrance to Murray's business.

Holland argues that the two assaults "were interrupted, with an opportunity for Mr. Holland to reconsider his options." But we cannot infer from the evidence that he actually did so. And while Holland argues that the two assaults did not share a purpose because his actions were the result of drug-induced psychosis and had no apparent purpose, there is no requirement that the purpose be a rational one. Holland's aim in both assaults was to assault Murray. Accordingly, the State was not required to elect the act upon which it would rely, and the court was not required to give a unanimity instruction.

3. Sufficiency of the evidence

Holland argues that the evidence was insufficient to establish that he "recklessly" inflicted substantial bodily harm. He contends that he had no knowledge that hitting Murray in the face risked dislodging Murray's artificial lens. He further argues that "there was no evidence that [he] was aware his conduct was wrongful" due to his longstanding substance abuse and mental health issues. Viewed in the light most favorable to the State, the evidence was sufficient to establish that Holland acted recklessly.

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. Salinas, 119 Wn.2d at 201. We defer to the trier of fact on issues of

10

conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

As charged here, a person is guilty of assault in the second degree if they "[i]ntentionally assault[ ] another and thereby recklessly inflicts substantial bodily harm." RCW 9A.36.021(1)(a). Thus, the State was required to prove both that Holland intentionally assaulted Murray and that, in doing so, he recklessly inflicted substantial bodily harm to Murray.

RCW 9A.08.010(1)(c) defines "recklessness" as follows:

A person is reckless or acts recklessly when [they know] of and disregard[ ] a substantial risk that a wrongful act may occur and [their] disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation.

Thus, there is both a subjective and an objective component to the mens rea of "recklessness." State v. Rich, 184 Wn.2d 897, 904, 365 P.3d 746 (2016). Whether sufficient evidence supports finding a defendant acted recklessly "depends on both what the defendant knew and how a reasonable person would have acted knowing these facts." State v. Graham, 153 Wn.2d 400, 408, 103 P.3d 1238 (2005).

Holland contends the State failed to prove he acted recklessly because there was no evidence he knew of, and disregarded, Murray's unique vulnerability. But "[w]ithout question, any reasonable person knows that punching someone in the face could result in a broken jaw, nose, or teeth, each of which would constitute substantial bodily harm." State v. R.H.S., 94 Wn. App. 844, 847, 974 P.2d 1253 (1999). The State was not required to present evidence

11

that Holland knew of Murray's artificial lens in order to establish that Holland acted recklessly by punching Murray in the face, chest and stomach.

Holland further contends that he was unable to form the requisite intent of recklessness because of his mental health issues and drug use. But Holland abandoned his diminished capacity defense. And the evidence showed only that PCP made Holland more impulsive and volatile. It did not show that Holland's PCP use interfered with his ability to understand the wrongfulness of his conduct. A reasonable jury could find that Holland acted recklessly.

4. Vagueness challenge to the aggravating factor

Holland argues that the aggravating factor in RCW 9.94A.535(3)(y) is unconstitutionally vague. Assuming without deciding that a criminal defendant may challenge an aggravating factor on vagueness grounds, we conclude that the language of the aggravating factor is not unconstitutionally vague.[1]

"[T]he due process vagueness doctrine under the Fourteenth Amendment and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct." State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). A statute is unconstitutionally vague if it "fails to define the offense with sufficient precision that a person of ordinary intelligence can understand it,

---

[1] Washington courts have consistently held, based on State v. Baldwin, 150 Wn.2d 448, 458, 78 P.3d 1005 (2003), that aggravating factors are not subject to a vagueness challenge because they "do not define conduct nor do they allow for arbitrary arrest and criminal prosecution by the State." Baldwin, 150 Wn.2d at 459. Holland argues that the Washington Supreme Court impliedly overruled Baldwin when it addressed the merits of a vagueness challenge to the rapid recidivism aggravator, RCW 9.94A.535(3)(t), in State v. Murray, 190 Wn.2d 727, 738, 416 P.3d 1225 (2018). We exercise our discretion to consider the merits of Holland's vagueness challenge to RCW 9.94A.535(3)(y), without deciding whether Holland is entitled to raise such a challenge with regard to an aggravating factor.

or if it does not provide standards sufficiently specific to prevent arbitrary enforcement." State v. Duncalf, 177 Wn.2d 289, 296-97, 300 P.3d 352 (2013) (quoting State v. Eckblad, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004)). The test for vagueness is whether a person of reasonable understanding is required to guess at the meaning of the statute. State v. Branch, 129 Wn.2d 635, 648, 919 P.2d 1228 (1996).

We review de novo whether a statute is unconstitutionally vague as a question of law. State v. Watson, 160 Wn.2d 1, 5, 154 P.3d 909 (2007). We presume a statute is constitutional, and the party challenging the statute bears the burden of proving otherwise. Bahl, 164 Wn.2d at 753.

RCW 9.94A.535(3) lists aggravating factors that can support a departure from the sentencing guidelines if the "facts supporting aggravating circumstances" can be "proved to a jury beyond a reasonable doubt." RCW 9.94A.537(3). One such factor is if "[t]he victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." RCW 9.94A.535(3)(y).

The injury required to convict a person of second degree assault, as charged here, is "substantial bodily harm." RCW 9A.36.021(1)(a). RCW 9A.04.110(4)(b) defines "substantial bodily harm" as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part."

Here, Murray experienced permanent injury. After the assault he lost even more of his limited vision. The changes to his vision impaired his ability to perform routine daily activities like reading, working or riding in a car. He also experienced frequent pain. It would be clear to a person of reasonable understanding that such permanent injuries are significantly greater than those contemplated by the legislature in defining "substantial bodily harm." RCW 9.94A.535(3)(y) is not unconstitutionally vague as applied to Holland.[2]

5. Findings of fact supporting the exceptional sentence

Holland contends that the trial court's findings of fact did not suffice to support the imposition of an exceptional sentence. This claim fails because the jury's finding of the aggravating factor by special verdict provides a sufficient basis on which to justify Holland's exceptional sentence.

If a jury unanimously finds beyond a reasonable doubt the existence of "one or more of the facts alleged by the state in support of an aggravated sentence," the court may impose an exceptional sentence "if it finds, considering the purposes of this chapter, that the facts found [by the jury] are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.537(6). Once the jury has made its factual determination by special verdict, "[t]he trial judge [is] left only with the legal conclusion of whether the facts alleged and found were sufficiently substantial and compelling to warrant an exceptional

---

[2] Holland contends that Murray is "a quintessential eggshell victim" and Holland "could not 'readily inform' himself of Mr. Murray's unique status and could therefore not take measures to avoid criminal liability for the particular harm that served as the basis for the aggravating factor." But the statute focuses solely on the seriousness of the injury, not the defendant's intent or conduct in causing it.

sentence." State v. Sage, 1 Wn. App. 2d. 685, 708, 407 P.3d 359 (2017) (alteration in original) (citing State v. Suleiman, 158 Wn.2d 280, 290-91 & 291 n.3, 143 P.3d 795 (2006)).

> The only permissible "finding of fact" by a sentencing judge on an exceptional sentence is to confirm that the jury has entered by special verdict its finding that an aggravating circumstance has been proven beyond a reasonable doubt. Then it is up to the judge to make the legal, not factual, determination whether those aggravating circumstances are sufficiently substantial and compelling to warrant an exceptional sentence.

Sage, 1 Wn. App. 2d at 709. The court "shall set forth the reasons for its decision in written findings of fact and conclusions of law." RCW 9.94A.535.

We review under a clearly erroneous standard whether evidence supports the reasons given by the sentencing judge to impose an exceptional sentence. State v. Law, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). We review de novo whether those reasons justify a departure from the standard sentence range. Law, 154 Wn.2d at 93.

Here, the trial court's written findings of fact and conclusions of law provide as follows:

> Pursuant to RCW 9.94A.535, and having reviewed all the evidence, records, and other information in this matter including the jury's findings of an aggravating circumstance, and having considered the arguments of counsel, this Court hereby imposes an exceptional sentence of 12 months on the offense of Assault in the Second Degree charged in Count I. This exceptional sentence is based on the following facts and law:
>
> A. FINDINGS OF FACT
>
> The defendant's offender score for the offense of Assault in the Second Degree is 14. The defendant's standard range for this offense is 63-84 months.
>
> On February 28, 2018, the jury found the following aggravating circumstance beyond a reasonable doubt, pursuant to RCW

15

9.94A.535(3)(y): the victim's injuries substantially exceeded the level of bodily harm necessary to satisfy the elements of the crime of Assault in the Second Degree, i.e., the victim's injuries substantially exceeded the level of bodily harm necessary to constitute substantial bodily harm.

B. CONCLUSIONS OF LAW – SUBSTANTIAL AND COMPELLING REASONS FOR IMPOSING EXCEPTIONAL SENTENCE

Considering the purposes of the Sentencing Reform Act, the aggravating circumstance specified in these Findings of Fact is a substantial and compelling reason that supports this Court imposing an exceptional sentence above the standard range.

The jury found by special verdict that the State proved "[t]he victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense" beyond a reasonable doubt. The trial court's findings of fact accurately reflected the jury's special verdict. This was the only finding required to authorize the trial court's imposition of the exceptional sentence "because the jury's finding in itself provides the trial court with a substantial and compelling reason to impose such a sentence." State v. Perry, 6 Wn. App. 2d 544, 556-57, 431 P.3d 543 (2018) (citing Duncalf, 177 Wn.2d at 296).

6. DNA collection fee

Holland challenges the $100 DNA collection fee imposed as part of his sentence. He contends, and the State concedes, that the fee must be stricken because he is indigent and because his DNA was collected following a prior felony conviction. Although these fees were mandatory when imposed, the Washington Supreme Court has since held in State v. Ramirez, 191 Wn.2d 732, 746-50, 426 P.3d 714 (2018), that courts may not impose discretionary legal financial obligations on an indigent criminal defendant. We accept the State's

16

concession and remand for the trial court to strike the DNA collection fee from the judgment and sentence.

### 7. Statement of additional grounds

In a pro se statement of additional grounds, Holland argues that he was denied the effective assistance of counsel because his attorney failed to request a jury instruction on the inferior degree offense of fourth degree assault.[3]

We review claims of ineffective assistance of counsel de novo. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In order to establish ineffective assistance of counsel, a defendant must demonstrate both that counsel's conduct was deficient (i.e., that it fell below an objective standard of reasonableness given the circumstances) and that the deficient performance resulted in prejudice (i.e., that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different). State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). If counsel's conduct can be characterized as a legitimate trial strategy or tactic, performance is not deficient. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). We engage in a strong presumption that counsel's representation was effective. McFarland, 127 Wn.2d at 335.

A party requesting an instruction on an inferior degree offense must show:

---

[3] Though Holland refers to fourth degree assault as a "lesser included" offense of second degree assault, it is more accurately characterized as an "inferior degree" offense. RCW 10.61.003.

(1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense.

State v. Fernandez–Medina, 141 Wn.2d 448, 454, 6 P.3d 1150 (2000) (quoting State v. Peterson, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)). When determining whether the evidence is sufficient to support an inferior degree offense instruction, we view the evidence in the light most favorable to the party requesting the instruction. Fernandez–Medina, 141 Wn.2d at 455–56. But the evidence must affirmatively establish the defendant's theory of the case, not merely allow the jury to disbelieve evidence of guilt. Fernandez–Medina, 141 Wn.2d at 456.

A person commits assault in the fourth degree when, "under circumstances not amounting to assault in the first, second, or third degree, [they assault] another." RCW 9A.36.041. Fourth degree assault is an inferior degree offense to second degree assault. State v. Villanueva–Gonzalez, 180 Wn.2d 975, 982 n.3, 329 P.3d 78 (2014). But for Holland to have been entitled to an instruction on fourth degree assault, there must have been affirmative evidence at trial that he assaulted Murray under circumstances not amounting to second degree assault – in other words, that he did not recklessly inflict substantial bodily harm.

Even viewed in a light most favorable to Holland, there was no evidence showing that he committed only fourth degree assault to the exclusion of second degree assault. As discussed above, Holland did not present evidence that his

drug use relieved him of the ability to form the requisite mental state. And the evidence was uncontroverted that the assault caused Murray substantial bodily harm. Holland fails to show that he was entitled to an inferior degree offense instruction or that his attorney was ineffective for failing to request one.

We remand for the trial court to strike the DNA collection fee from the judgment and sentence. In all other respects, we affirm Holland's judgment and sentence.

_Chun, J._

WE CONCUR: